LOUISE HAGENOW

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 20, 1900—Rehearing denied February 7, 1901.*

1. APPEALS AND ERRORS—*when objection that the grand jury was improperly drawn comes too late.* Alleged irregularity in drawing the grand jury is not an available objection after the accused has pleaded to the indictment and been convicted, where there was no motion to quash the indictment and the record fails to show that any evidence was offered as to the manner in which the grand jury was drawn.

2. EVIDENCE—*probative force of dying declaration is for the jury.* If a dying declaration was properly taken and made in anticipation of death, its probability and probative force are for the jury.

3. SAME—*when statement is properly admitted as a dying declaration.* A statement is properly admitted as a dying declaration where, at the time it was made and signed, the declarant had not only been informed by physicians that she could not possibly live, but also realized that such was the case and so informed others.

4. INSTRUCTIONS—*when use of display type is not ground for reversal.* The use of display type in instructions, although not a commendable practice, is not ground for reversal if the instructions in which such type is used are ordinary and general ones on questions not involving specific facts.

5. JUDGMENTS AND DECREES—*when objection to judgment is technical.* An objection that a judgment of conviction uses the words "Cook county" instead of the corporate name "County of Cook" is merely technical, and does not affect the judgment where the indictment was presented by the grand jurors of the county of Cook and the accused was tried by the criminal court of Cook county.

6. SAME—*duration of imprisonment need not be fixed by judgment.* A judgment of conviction need not specify the duration of imprisonment where the accused is convicted under the Indeterminate Sentence act, of a crime which does not require that the jury shall fix the term of sentence.

7. The court reviews the evidence in this case, and holds it to be sufficient to sustain the conviction of the plaintiff in error of the crime of manslaughter in causing death by an abortion.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

188—35

D. G. RAMSAY, and H. D. BOTTUM, (JOHN F. GEETING, and HENRY C. GEETING, of counsel,) for plaintiff in error:

An indictment which does not state the facts in a clear, positive and certain manner is bad. *Cochran* v. *People*, 175 Ill. 28; *McNair* v. *People*, 89 id. 441; *United States* v. *Carll*, 105 U. S. 611; *Pettibone* v. *United States*, 148 id. 197; *State* v. *Hill*, 79 N. C. 657; *State* v. *Costello*, 62 Conn. 128.

It is necessary to allege in the indictment (and accordingly to make proof) that the act "done was not necessary for the preservation of the mother's life." *Beasley* v. *People*, 89 Ill. 571.

An argumentative indictment is bad. *Prichard* v. *People*, 149 Ill. 50.

An order or judgment directing an imprisonment but not fixing a limit is void. The ministerial officer to whom it is directed has no authority to determine the limit fixed by law. *Davis* v. *Wilson*, 65 Ill. 525; *Danforth* v. *Clason*, 21 Ill. App. 572.

There is no county in this State known as "Cook county." The term is simply an abbreviation used in the names of courts. The name is "County of Cook." Rev. Stat. chap. 34, sec. 22; Const. of 1870, art. 6, secs. 23, 26.

The character, conduct, acts, opinions and surroundings of deceased may be given in evidence to affect the force of the declarations. *Tracy* v. *People*, 97 Ill. 101; *State* v. *Elliott*, 45 Iowa, 486; *Hill* v. *State*, 64 Miss. 431; *Goodall* v. *State*, 1 Ore. 333; *Commonwealth* v. *Cooper*, 5 Allen, 495.

A dying declaration should be clear, positive and reasonable, and simply a statement of facts without ambiguity, argument, opinion or sentiment.

Dying declaration are as fully competent on the part of the defense as for the People. *Felder* v. *State*, 23 Tex. App. 477; 1 Bishop on Crim. Proc. sec. 1210; *McPherson* v. *State*, 9 Yerg. 279; *Battel* v. *State*, 74 Ga. 101; *Moore* v. *State*, 12 Ala. 764.

Statements by the declarant contradictory of his dying declarations, and contradictions in the latter, may be

shown to detract from their weight with the jury.   *Moore* v. *State*, 12 Ala. 704; *Battel* v. *State*, 74 Ga. 101; Bishop on Crim. Proc. sec. 1209; *Carver* v. *United States*, 164 U. S. 694; *Felder* v. *State*, 23 Tex. App. 477; *Ashton's case*, 2 Levin's Crown Cas. 147; *People* v. *Lawrence*, 21 Cal. 368; *McPherson* v. *State*, 9 Yerg. 279; *Clark* v. *People*, 16 Colo. 511; *Haney* v. *Commonwealth*, 5 Crim. Law Mag. 47; *Rex* v. *Scalfe*, 1 M. & R. 551; *United States* v. *Taylor*, 4 Cranch's C. C. 338.

The grand jury was chosen, etc., in direct conflict with section 4 of the Jurors act of June 9, 1897.   Laws of 1897, (Legal News ed.) 185.

An indictment which was presented by a grand jury illegally chosen, or chosen at an irregular term of court, is void.   *Foley* v. *People*, Breese, 31; *Kohlheimer* v. *State*, 39 Miss. 548.

E. C. AKIN, Attorney General, (CHARLES S. DENEEN, and BEN M. SMITH, of counsel,) for the People.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

At the September term, 1899, of the criminal court of Cook county, plaintiff in error was indicted for the murder of one Marie Hecht by committing an abortion upon her on the 24th day of August, 1899, from the effect of which she died on the first day of September thereafter. A trial was had at the January term of the court, and the jury found her guilty of manslaughter and fixed her punishment at imprisonment in the penitentiary.   Motions for new trial and in arrest were overruled, and on February 19 judgment of conviction was entered, and she was ordered to be confined in the penitentiary at Joliet, to be held in custody "until discharged by the State Board of Pardons, as authorized and directed by law, provided such term of imprisonment in said penitentiary shall not exceed the maximum term for the crime for which said defendant was convicted and sentenced."

The errors assigned, and for which a reversal is asked, will be taken up in order, from which the facts of the case will sufficiently appear.

It is claimed that the grand jury which found the indictment was not selected and empaneled as required by law. By the amendment of 1897 of the Jury act (Laws of 1897, p. 243,) provision is made in counties of 100,000 inhabitants for the appointment of three electors to act as jury commissioners. Section 4 of that amendment provides for the selection by the jury commissioners, from time to time, from the jury list prepared by them, (provided for in section 2 of the act,) of the requisite number of names, which are each to be written on separate tickets, with the age, place of residence and occupation of each, if known, the whole to be put into the grand jury box. The section, after providing that the jurors so selected shall, as near as may be, be residents of different parts of the county and of different occupations, provides as follows: "And one or more of the judges of said court shall certify to the clerk of the court the number of jurors required at each term. The said clerk shall then repair to the office of the jury commissioners, and, in the presence of at least two of said commissioners, and also in the presence of the clerk of said commissioners, if there be one, proceed to draw at random from said jury box, after the same shall have been well shaken, the necessary number of names, and shall certify the same to the sheriff, to be by him summoned according to law. If more jurors are needed during said term the court shall so certify, and they shall be drawn and summoned as above provided, forthwith."

The record in this case with reference to the empaneling of the jury is as follows: "It appearing to the court that public justice requires a grand jury be selected and summoned for the next term of this court, in accordance with the statute in such case made and provided, the court of its own motion doth order that the jury commis-

sioners of Cook county do, at least twenty days before the first day of the next term of this court, select fifty persons, possessing the qualifications of jurors required by law, to serve as grand jurors at said term, and that said commissioners shall, within five days after such selection, certify the names of the persons so selected as grand jurors to the clerk of this court, who shall issue and deliver to the sheriff of Cook county, at least ten days before the next term of this court, a summons commanding the said sheriff to summon the persons so selected, as aforesaid, to appear before this court at the hour of ten o'clock on the third Monday of the next term thereof, to constitute a grand jury for such term. It is further ordered by the court that the clerk of this court transmit a certified copy of this order to the said jury commissioners forthwith. And afterwards, to-wit, on the 18th day of September, in the year last aforesaid, it being the term of court aforesaid, the following among other proceedings were had and entered of record in said court, which said proceedings are in the words and figures following, to-wit: 'The sheriff of Cook county returned into court the *venire facias* heretofore issued for a grand jury for this term and returnable this day, by which it appears that the following named persons have been duly summoned to appear this day and serve as grand jurors at the present term of this court.'"

No motion to quash the indictment was interposed, and no proof appears in the record, nor was any offered, so far as the record discloses, as to the manner in which the grand jury was selected. In *Gitchell* v. *People*, 146 Ill. 175, it is said (p. 186): "As a general rule, pleading to an indictment admits its genuineness as a record.   *   *   * After a party has pleaded to an indictment and been convicted, it is too late to object to the constitution of the grand jury." See, also, 19 Am. & Eng. Ency. of Law, (1st ed.) 3, 5; *United States* v. *Gale*, 109 U. S. 65; *People* v. *Petrea*, 92 N. Y. 135; *Preston* v. *Stone*, 63 Ala. 127; *People* v.

*Scarborough,* 55 Md. 345; *Wilson* v. *People,* 3 Col. 225; *Stone* v. *People,* 2 Scam. 326; *Williams* v. *People,* 54 Ill. 422.

Authorities cited by counsel for plaintiff in error in support of the contention that an indictment found by a grand jury irregularly chosen is void, are all cases, so far as we have been able to examine them, where exception was regularly and specially made in apt time. The alleged irregularity in the drawing and selection of the grand jury, as presented by the record, comes too late to be available as an objection.

The second error assigned is, the indictment is insufficient in that it does not sufficiently describe the instrument, and the manner of its use, which it is alleged caused the death, and is argumentative as to the cause of death. No specific objections are pointed out by the plaintiff in error. The indictment states the offense in the language of the statute and so that the charge may be easily understood by the jury. The manner of use of the means employed to accomplish the act which it is alleged resulted in the death of Marie Hecht is sufficiently explicit in this record, as well as stating the cause of death.

It is next claimed the evidence does not sustain the verdict. Twelve witnesses were examined for the People, in addition to the introduction of the dying declaration of Marie Hecht. This statement is as follows (omitting the unimportant portions):

"I, Marie Hecht, now lying dangerously ill at the St. Elizabeth's Hospital, and believing I am about to die, make this my ante-mortem statement: I am twenty-three years old and will be twenty-four years on the 19th day of November. * * * In January of this year I became acquainted with John Schockweiler, a young man about twenty years old, who is employed in a freight house on the south side and resides at 149 Orleans street. I had sexual intercourse with him for about five or six times, and in the month of May I noticed that I was pregnant,

* * * and on Thursday, at 12:30 P. M., August 24, 1899, I went of my own free will to visit Dr. Louise Hagenow, at 330 East Division street. She laid me on a lounge and examined me, and after the examination she said she would relieve me of the child for $75, and that she would have to take it from me with instruments. 'No,' I said, 'No; I cannot afford to pay you $75 for the work; I'll give you $70.' Then she agreed. I then gave her $70. She first laid me on a lounge and began to use an instrument on me, and during that time I suffered considerable pain. I remained on the lounge for about twenty minutes. Then the doctor made me get up and walk around the room. I was so weak I could not walk very long. Then I went and laid down on the bed. The doctor then came in and began to use the instruments again. I felt as though I was being cut to pieces, and at about 5:30 P. M. she took the child away from me. I suffered great pain, and the following day, Friday, August 25, I left, and took a car for 941 North Clark street,—a friend of mine named Spitzer,—where I remained until Monday morning at ten o'clock, August 28, when I left and was brought to the St. Elizabeth's Hospital in a carriage. * * * I now see the woman standing at my bedside who performed the abortion." Signed, "Marie Hecht."

Augusta Spitzer, with whom deceased lived, said that on the morning of the 24th deceased came to where witness was working, at 616 Dearborn street, and stayed about an hour; that she was in good health and was laughing while there; that the next time she saw her was about eight o'clock P. M., Friday, when she came to witness' place sick and went to bed; that witness helped her undress; that her clothing was bloody; that she stayed in her room, having no medical attendance, until Monday; that Emma Baldeschweiler remained with her that day and a Mrs. Amich stayed with her Monday night; that the next day (Tuesday) she was taken to the hospital, where witness saw her Wednesday, and on Thursday with said

Emma and also one Lena Haller; that she went to see
her with the same parties on Friday, about four o'clock
P. M.  Sister Philomena, of St. Elizabeth's Hospital, who
was present on Thursday when the dying statement was
made, testifies to a conversation between the deceased
and the defendant, in which the deceased said to her,
"What did you do to me? I have got to die;" that Mrs.
Hagenow didn't listen to that, but said, "Yes, what did
you do to me? See in what trouble you bring me; you
promised me not to say anything to anybody."  The girl
said, "Yes, I did, but I couldn't deny it any longer."  The
witness further states that the defendant told deceased
to tell the doctors that she was in pain when she came
to her, and that deceased answered, "No, that's the way
it was."  Dr. Kramps testified that the vulva, vagina and
uterus were in a mutilated condition, and that there were
bruises and lacerations as if an instrument or some "odd
instrument" had been used that brought this about.  Emma
Baldeschweiler, who went to see the deceased on Friday
before she died, testified to a conversation heard by her
between the deceased and the defendant.  Mrs. Hagenow
having said something about having sent her out on a
"guaranty," deceased answered, "A nice guaranty; I have
to die for you."

The following advertisement was introduced in evi-
dence, after having been identified: "Dr. Louise Hagenow,
licensed physician; female irregularities; new scientific,
painless method; good treatment; good results; expert,
27 years.  Private home, 330 E. Division, near Wells."
Defendant admitted having inserted similar notices dur-
ing the summer of 1899 in the leading Chicago papers.

It is unnecessary to comment further on the testimony,
much of which is revolting.  It is sufficient to say that
the defense attempted to be set up was, that what was
done by the defendant was necessary to save the life of
the deceased.  As to this there was a sharp conflict, but
there is ample evidence in the record to sustain a convic-

tion. And this disposes of the first, second, third, fourth, fifth, sixth, seventh and eighth assignments of error.

The ninth assignment urged is in admitting the alleged dying statement above set out, because, as counsel for plaintiff in error urge, it is in many respects incredible and improbable, and because the deceased was not competent, at the time, to make such a statement, and because it was not properly made and taken. If properly taken, and if the statement was made in anticipation of death, its probability and probative force were questions for the jury. The proof is ample that at the time deceased made and signed the statement, not only had she been informed by the physicians that she could not possibly live, but she realized that such was the case and so informed those who came to visit her. There was no error in admitting this statement in evidence.

Objections were made and exceptions taken by plaintiff in error to the admission and exclusion of evidence. We deem it unnecessary to unduly extend this opinion by alluding to all these objections and exceptions, which are very numerous, but it is sufficient to say that from a careful examination of the evidence in this record we find no error on these questions.

Exception is taken to the giving of certain instructions, asked in behalf of the State, which were given in display type. In *Wright* v. *Brosseau,* 73 Ill. 381, the practice of underscoring instructions was condemned. That practice, or the use of display type or italics, should not be employed to call the attention of the jury to some prominent feature of the case or to any fact which might be contested. The instructions in which the display type was used in this case were merely ordinary and general instructions on questions not involving specific facts, and were therefore of a character not to injure the plaintiff in error.

Objection is taken to other instructions given by the court. Some of the instructions to which objection is

thus taken are copied from instructions which have been expressly approved by this court in other cases. Others, whilst technically informal, are covered by other instructions by which the jury were fully informed and directed as to all questions involved in the instructions to which objection is taken. From the entire series of instructions it is clear that the jury were not misled or misinformed as to the law. It is clear that the evidence fully makes a case against the accused as found by the jury, and no error has been committed in the ruling of the court which is prejudicial to her in the giving or refusal of instructions.

It is urged the judgment is erroneous in that part which provides as follows: "The said defendant, Louise Hagenow, be taken from the bar of the court to the common jail of Cook county, and from thence by the sheriff of Cook county to the penitentiary," it being urged by the counsel for plaintiff in error that there is no "Cook county;" that the corporate name is "county of Cook," and that committing the defendant to the jail of Cook county, to be taken by the sheriff of Cook county to the penitentiary, renders the judgment of conviction void. The indictment under which the defendant was tried was a presentment by the grand jurors of the county of Cook. The court in which she was tried was the "criminal court of Cook county." The objection is technical, and does not affect the judgment.

It is objected that the judgment of conviction is erroneous in not specifying the duration of imprisonment. The defendant was convicted under the Indeterminate Sentence act, and the amendments thereto, of a crime which did not require that the term of the sentence should be fixed by the jury. Nor does the law require the term to be fixed by the court in its judgment.

We find no error in the record requiring or warranting a reversal, and the judgment of the criminal court of Cook county is affirmed.      *Judgment affirmed.*