[Crim. No. 1650. In Bank.—September 25, 1911.]

## THE PEOPLE, Respondent, v. AH SUN, Charged Herein as AH FOOK, Appellant.

CRIMINAL LAW—EVIDENCE OF GUILT—MORAL CERTAINTY—SPECULATIVE POSSIBILITY OF INNOCENCE.—In a prosecution for murder, the moral certainty which the law exacts before upholding a conviction does not exclude every speculative and fanciful possibility. In the present case the evidence is reviewed, and it is held that it is only by the indulgence of such a possibility that it can be said that the evidence does not establish the defendant's guilt.

ID.—INFORMATION—IMMATERIAL VARIANCE AS TO NAME OF DECEASED.—Where in an information for murder the name of the deceased is given as Chin Hong, the fact that certain of the witnesses spoke of him as Chin Yong is not a substantial variance. The question of identity was one of fact for the jury.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order refusing a new trial. John E. Richards, Judge.

The facts are stated in the opinion of the court.

John P. Fitzgerald, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, for Respondent.

HENSHAW, J.—The defendant was charged with the crime of murder. Upon trial he was convicted of murder in the second degree. He moved for a new trial; his motion was denied, and he was sentenced to imprisonment for the term of fifteen years. From the order denying his motion for a new trial and from the judgment he appeals.

The most serious question in the case, and the one upon which the justices of the court of appeals found themselves unable to agree, is whether or not the evidence is sufficient to sustain the verdict. The facts presented to the jury were the following: The deceased and defendant (both Chinamen) were laborers upon the Zuck Ranch in the neighborhood of Gilroy. They were employed by Zuck through the medium of a "boss Chinaman" residing in Gilroy. They occupied a cabin upon the ranch and were engaged in hoeing beets. They worked together, apart from the other farm hands. While so living together in this cabin and doing their own cooking, they were not on amicable terms. They did not associate together in friendship. They went to and from their work separately and by different routes; disagreements and quarrels were frequent, as evidenced by the loud and wrangling voices. Their language, however, was Chinese, and was not understood by the white men on the place. But at least one cause of their dissension, as appeared from the testimony of Chinese witnesses, was over the matter of cooking. They had been in Zuck's employ for about three weeks, making occasional visits to the neighboring town of Gilroy, where their Chinese "boss" resided. Their work was not satisfactory, probably owing to the differences between them. On May 10, 1904, at about 8 o'clock in the evening, the defendant came to Zuck, stated that he was suffering from a severe toothache, that he wanted to go to Gilroy to have his tooth treated and would not work the next day, but would the day following. This was on Monday evening. It was imperative that the beets should be hoed. The work was being neglected, and on Tuesday Zuck went to the town of Gilroy to get a note from the "boss Chinaman" instructing the two men either to work with more fidelity or to leave the place. He returned from Gilroy and went to their cabin about half-past five or six o'clock in the afternoon to deliver to them the message, and found one of them, Chin Hong, dead upon the floor of the cabin, shock-

ingly mutilated from the blows of an ax. The blood stained ax itself, which had been used by the two Chinamen in cutting wood for their fire, was afterward found concealed near by. Chin Hong had evidently been dead for some time. The defendant had disappeared, leaving his personal effects, blankets, clothes, etc., in the cabin. So far as known he did not go to Gilroy, nor have his teeth treated. He was seen by two other Chinamen who had worked with him, who knew him, and who recognized and spoke to him, sitting upon the outside platform of a country store twenty or more miles away from Gilroy and on the main highway to the city of San Jose. He appeared tired, and in answer to questions of his Chinese acquaintances, replied that he was looking for work. This was about mid-day of Tuesday, the day following the Monday evening upon which the prosecution declares the murder was committed. Upon the discovery of the crime search was made for the defendant, but he had disappeared. He could not be found in his usual haunts. So far as could be learned he did not communicate with his friends, and it was several years afterward that he was discovered and arrested in the city of San Jose. After his arrest he was confronted with certain Chinese witnesses who testified to knowing him and to having seen him in Gilroy. He vehemently denied ever having been in Gilroy.

By the appellant it is contended that all this amounts to mere circumstances of suspicion; that the evidence at most shows only unexplained flight, and that this, while a circumstance pointing to guilt, has never been held to be sufficient to uphold a conviction. But, in fairness, it must be answered that there is much more than the mere circumstance of unexplained flight. There is the evidence of the quarrels and of the hostility that existed between the two men; there is the abandonment by the defendant of his personal effects; there is the circumstance that the murder was committed with an ax which was in the possession of the Chinamen, and which was hidden by the murderer; there is the false statement to the employer about his desire to go to Gilroy to have a tooth treated; there is the statement that he would return to work, which he never did; there is his absence from his haunts and associates, and his vehement false denial after his arrest that he had ever been in Gilroy. It is, of course, within the bounds

of possibility that the crime was committed by some other person, in the absence and without the knowledge of the defendant. , But, if so, it leaves all of the statements and the whole course of conduct of the defendant unexplained and unexplainable. For there would then appear no reason why, as an innocent man, he should have lied; why he should not have returned for and taken his effects; why he should not have given notice to his employer and to his Chinese "boss" that he was going elsewhere to work, nor any reason why in seeking work he should have abandoned his personal belongings, so important to the laboring Chinaman; and, finally, there is no reason why he should have absented himself and should have made denial of his presence in Gilroy, which repeated presence was abundantly established by witnesses. The moral certainty which the law in its humanity exacts before upholding the conviction of a man charged with crime does not exclude every speculative and fanciful possibility, and it is only by the indulgence of such a possibility that it can be said that the evidence did not establish this defendant's guilt.

In the information the name of the deceased is given as Chin Hong. Certain of the witnesses spoke of him, as appears by the transcript as Chin Yong. The contention that this is a substantial variance, and that the two names refer to different human beings, with the resulting doubt as to whether in fact Chin Hong or Chin Yong was the victim of the murder, is not well founded. It is plain that the references were to one and the same person. Even if the doubt can be regarded as a serious one, the answer is that it was a question of fact for the jury to answer, and it was resolved against the appellant's contention by their verdict. (*People* v. *Fick,* 89 Cal. 149, [26 Pac. 759].)

The judgment and order appealed from are therefore affirmed.

Shaw, J., Angellotti, J., Melvin, J., Lorigan, J., and Sloss, J., concurred.