[Crim. No. 2759. In Bank.—May 9, 1925.].

## THE PEOPLE, Respondent, v. PASQUAL MORANI, Appellant.

[1] CRIMINAL LAW—EVIDENCE—PROOF OF OTHER OFFENSES.—A defendant in a criminal cause can be tried for no other offense than that charged in the indictment or information, and therefore it is not competent for the prosecution to prove the commission of independent crimes by the defendant, the evidence of which has no tendency to prove some material fact in connection with the particular crime charged; but this rule does not exclude such evidence when it logically tends to prove any fact necessary or pertinent to the proof of the crime for which the defendant is being tried.

[2] ID.—ADMISSIBILITY OF EVIDENCE OF OTHER ACTS.—In a prosecution for crime, generally speaking, evidence of the commission of crimes other than that charged in the indictment or information is admissible when it tends to establish intent, guilty knowledge, motive, a common scheme, plan or system, or when the other crimes are part of the *res gestae;* and such evidence is not to be rejected because it tends to prove the commission of other crimes or because it may prejudice the defendant in the minds of the jurors.

[3] ID.—ABORTION—EVIDENCE OF PRIOR ACT.—In a prosecution for murder growing out of the performance of a criminal operation upon a pregnant woman for the purpose of producing an abortion, where the defendant claimed that his sole purpose was an innocent and proper one, namely, to make an examination for the purpose of determining whether or not the woman was afflicted with a tumor, evidence offered by the prosecution that on a prior occasion the defendant had performed precisely similar operations upon another pregnant woman was admissible for the purpose of showing criminal intent.

---

1. See 8 Cal. Jur. 58; 8 R. C. L. 198.

2. Admissibility of evidence of other crimes, notes, 62 L. R. A. 193; 3 A. L. R. 784, 1540; 22 A. L. R. 1016.

[4] ID.—EVIDENCE OF SIMILAR ACTS—REMOTENESS OF TIME.—Where the evidence of another offense is admissible and relevant for the purpose of showing knowledge as an essential element of criminal intent, the remoteness in point of time of such other offense may go to the weight of the evidence, but not to its admissibility.

(1) 16 C. J., p. 586, n. 98, p. 588, n. 8.    (2) 16 C. J., p. 574, n. 56, p. 589, n. 13, 18, p. 590, n. 25, p. 591, n. 33.    (3) 16 C. J., p. 329, n. 40; 16 C. J., p. 592, n. 53.    (4) 16 C. J., p. 589, n. 13.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying new trial. Fred V. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

Joseph P. Lacey and Milton E. D'Askquith for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

MYERS, C. J.—The defendant appeals from a judgment of conviction of murder in the second degree, growing out of the performance of a criminal operation upon a pregnant woman for the purpose of producing an abortion, in violation of Penal Code, section 174, and which resulted in her death. It is not claimed herein that the evidence is insufficient to support the verdict. As is usual in such cases it was sharply conflicting upon various points, but the evidence produced by the prosecution was, if believed by the jury, ample to support the following statement of facts: The defendant, who was following the occupation of a barber in San Francisco, was known as "Doctor Morani," and claimed to have studied medicine eight years, but admittedly he had never been licensed to practice medicine, surgery, or any other method of treating the sick. He had told Mr. Dahl, the husband of the deceased herein, that he knew how to successfully perform abortions, and an arrangement was made between them for the performance of an abortion by him upon Dahl's wife, who was then pregnant. By appointment Dahl brought his wife to the defendant's home

4. See 8 Cal. Jur. 66.

in San Francisco, where the defendant made an examination of her and an appointment was made for the defendant to come to Dahl's house in Fruitvale the following Saturday evening and there to perform the operation. This appointment was kept, the defendant bringing with him a small satchel containing surgical instruments. Upon arrival at the house defendant said ''he had to do some work on her that evening'' and used the term, ''I have to dilate the womb.'' Defendant then went into the bedroom with Mrs. Dahl where they remained about fifteen minutes and upon coming out the defendant said to her, ''I did not hurt you much, did I?'' and she said ''No. That was quite easy. I hope the last of it will be as easy as that.'' Defendant remained in the house that night and the following morning asked Mrs. Dahl if she had any bearing down pains, to which she replied in the negative, and he seemed somewhat surprised and disappointed that she had no pains. Then Dahl took the children out of the house, with the understanding that an operation was going to be performed by the defendant during his absence. Upon his return at 1 o'clock in the afternoon defendant said to Dahl that he had performed or attempted to perform the abortion; that it was more of a job than he thought it would be; that he had pulled a piece out of her that was a piece of a hand, showing indications of fingers, and that evidently she had gone four months instead of three, and if he had known that she was gone four months instead of three he would not have taken the case for a million dollars. During the remainder of the day defendant repeatedly urged Mrs. Dahl to permit him to finish the operation, at which she demurred, but finally consenting thereto, in the evening, she was placed upon the bed and defendant inserted a speculum and expanded it and through it inserted an instrument about a foot long which opened up something like a pair of scissors, and defendant inserted this and worked it like a pair of scissors, at which the woman gave a terrible scream and defendant desisted, saying, ''She won't let me work; it is no use.'' When the instrument was withdrawn it was covered with blood and Dahl noticed a chunk or clot of blood in the chamber underneath where the defendant was working The woman was then in terrible pain and Dahl went in

search of a physician, finally procuring one about midnight, who called, examined her, gave her an opiate, and who the next morning had her taken to a hospital and there performed a curettage, in the course of which he discovered that the uterus had been opened by some instrument or foreign body and had been punctured and there was a cut or tear about an inch and a half long in the walls thereof, resulting in a hemorrhage into the abdominal cavity and consequent peritonitis, from which the woman died. Defendant denied that he had examined the woman at his home in San Francisco and testified that he went with Dahl to the latter's home in Fruitvale on Saturday evening for the sole purpose of examining the woman for a suspected tumor. He denied that he used a speculum or curette or any other instrument upon her person, and insisted that he did no more than to make a digital examination of her uterus; that by this means he found that she was or had recently been pregnant; that she had been attempting to produce a miscarriage upon herself and that the water had broken, and he thereupon urged Dahl to call a physician to treat her. He admitted that he remained at the Dahl home from Saturday evening until the following Monday morning; that he took with him upon that visit a speculum and "a few other instruments," and that he threw the speculum away out of the car window upon leaving the Dahl house Monday morning. He was unable to give any reason for so doing. The prosecution also produced witnesses who testified that three and one-half years previously this defendant had agreed to perform an abortion upon another pregnant woman and that in carrying out his agreement he had proceeded in the same manner and had done the same things which he is shown by the evidence to have done in the present case; that the result thereof in the former case was a miscarriage which nearly caused the death of the woman. The contention of the appellant herein is that the trial court committed prejudicial and reversible error in admitting the evidence of the previous offense because of the remoteness thereof in point of time, with the result that the defendant was, in effect, convicted upon this trial of the previous offense as to which the statute of limitations had run. [1] It is well settled that a defendant in a criminal case can be tried for no other offense than that charged in the indictment or in-

formation, and therefore it is not competent for the prosecution to prove the commission of independent crimes by the defendant, the evidence of which has no tendency to prove some material fact in connection with the particular crime charged. But this rule does not exclude such evidence when it logically tends to prove any fact necessary or pertinent to the proof of the crime for which the defendant is being tried. [2] Such evidence is not to be rejected because it also tends to prove the commission of other crimes or because it may prejudice the defendant in the minds of the jurors. Generally speaking, such evidence is admissible when it tends to establish intent, guilty knowledge, motive, a common scheme, plan or system, or when it tends to connect the defendant with the crime charged, or when the other crimes are part of the *res gestae* (8 Cal. Jur., p. 60 et seq.). [3] The evidence here complained of was admitted for the sole purpose of proving guilty knowledge and intent and it was so limited by the court in its instructions to the jury. It seems to us that it was fairly admissible for this purpose. Defendant herein claimed that his sole purpose was an innocent and proper one, namely, to make an examination for the purpose of determining whether or not the woman was afflicted with a tumor. The jurors may have believed that he did the things above related and yet they may have reasonably doubted that he did those things with the intent of producing a miscarriage. They may reasonably have doubted that the defendant even knew that the doing of those things would be likely to produce a miscarriage. He was not a physician or surgeon and his examination upon the witness-stand indicated that his knowledge of medicine and surgery was extremely limited and fragmentary. Under these circumstances it was not only proper but necessary for the prosecution to prove that the defendant in performing the acts testified to did so with the intent of producing a criminal miscarriage. When the prosecution showed that the defendant had previously performed precisely similar operations upon the body of another pregnant woman and that a miscarriage resulted therefrom, this evidence tended to show that the defendant when he thereafter performed the same acts upon the person of Mrs. Dahl did so with the knowledge that those acts would be

likely to produce a miscarriage, from which it could be justly inferred that he did so with the express intent of producing such miscarriage. The evidence was therefore relevant for the purpose of showing knowledge as an element of criminal intent. In this view of the case the remoteness in point of time of the previous offense is of no material consequence. If the defendant acquired such knowledge three and one-half years previously under the circumstances here shown in evidence it is not at all likely that he had forgotten it in the interim. [4] Where the evidence of another offense is admissible and relevant for the purpose of showing knowledge as an essential element of criminal intent, the remoteness in point of time of such other offense may go to the weight of the evidence but not to its admissibility. The rule in this respect is different from that applicable where the evidence of other offenses is admissible solely upon the ground that it tends to prove a common scheme, plan, or system embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, in which case the evidence of such other offenses must be closely related both as to time and character. The case of *People* v. *Northcott,* 45 Cal. App. 706 [189 Pac. 704], is similar in many respects to the case at bar. In that case the defendant was charged with murder growing out of the performance of a criminal abortion and evidence was received of other abortion operations performed by him previous to the offense charged. The district court of appeal held, upon the authority of cases cited from other states, that such evidence was admissible, and this court in denying an application for transfer withheld any expression of opinion as to its admissibility under the circumstances of that case. In that case, however, the defendant denied not merely that he had performed the operation with criminal intent, but denied that he had performed any operation whatsoever upon the person of the decedent, and denied that he had ever seen her. Under those circumstances it was argued that such denials on his part negatived any possible contention that he had performed the acts with an innocent purpose and that for this reason the evidence was irrelevant and immaterial. The case of *People* v. *Hickok,* 56 Cal. App. 13 [204 Pac. 555], more closely approximates the present case. The defendant there was charged with a violation of Penal

Code, section 274, and while he did not himself take the stand, produced a medical witness whose testimony tended to indicate that the operation performed by the defendant was performed for an innocent purpose. The court held that under these circumstances evidence of other abortions previously performed by the defendant was admissible in order to rebut this implied contention of the defendant; that the circumstance that it would have been proper only in rebuttal goes merely to the order of proof, and that the defendant was not prejudiced by the fact that such evidence was received as part of the prosecution's case in chief. The court said:

"As a rule, upon the trial for a particular crime evidence which tends to show the commission of another and distinct offense by the defendant is inadmissible. To this rule there are, however, several exceptions. According to one line of authorities the state would have the right to introduce such testimony as a part of its case in chief in order to negative the possibility that the operation was necessitated by the condition of health of the patient. (*People* v. *Hagenow*, 236 Ill. 514 [86 N. E. 370]; *People* v. *Northcott*, 45 Cal. App. 706 [189 Pac. 704]; *People* v. *Sindici*, 54 Cal. App. 193 [201 Pac. 975].) In two California cases the supreme court, in denying petitions for their transfer to that court, withheld its approval of this doctrine, the exigencies of those cases not requiring its application. However, it is settled that such evidence is admissible whenever it appears that the defendant claims that the operation was innocently performed and for a lawful purpose. (*People* v. *King*, 23 Cal. App. 259 [137 Pac. 1076].) . . .

"In the case of *People* v. *Seaman*, 107 Mich. 348 [61 Am. St. Rep. 326, 65 N. W. 203], it is said: 'Upon principle and authority it is clear that where a felonious intent is an essential ingredient of the crime charged, and the act done is claimed to have been innocently or accidentally done, or by mistake, or when the result is claimed to have followed an act lawfully done for a legitimate purpose, or where there is room for such an inference, it is proper to characterize the act by proof of other like acts producing the same result as tending to show guilty knowledge, and the intent or purpose with which the particular act was done and to rebut the presumption that might otherwise obtain.'"

We conclude that the evidence here complained of was relevant to prove knowledge of the defendant as an ingredient of the criminal intent which was an essential element of the crime charged. This conclusion disposes of the point made that the district attorney was guilty of misconduct in making reference to the previous offense in his opening statement to the jury.

The judgment of conviction and the order denying defendant's motion for a new trial are affirmed.

Shenk, J., Seawell, J., Richards, J., Waste, J., Lawlor, J., and Lennon, J., concurred.

Rehearing denied.