(No. 22390.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ABRAHAM COHEN, Plaintiff in Error.

*Opinion filed June 20, 1934.*

THOMAS J. JOHNSON, SR., and THOMAS J. JOHNSON, JR., for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The plaintiff in error (hereinafter called the defendant) was convicted in the criminal court of Cook county on an indictment charging him and Edwin Healy with the robbery of Frank J. Schoffen of $104, the property of the Illinois Bell Telephone Company. The defendant was sentenced to imprisonment in the penitentiary to serve a term of from one to twenty years. He has sued out a writ of error to review that judgment. Healy pleaded guilty and was sentenced to the penitentiary. He did not testify on the trial.

The errors assigned may be grouped as follows: (1) The trial court should have quashed the indictment; (2) the motion made by the defendant in arrest of judgment should have been allowed; (3) the trial court admitted improper and prejudicial testimony against the defendant; (4) the State's attorney made improper, prejudicial and inflammatory remarks to the jury during the course of his argument, and in his final argument improperly referred to some of the jurors trying the case, by their occupations; (5) the court refused proper instructions requested by the defendant; (6) the court erred in denying the defendant's motion for a new trial; (7) the guilt of the defendant was not established beyond all reasonable doubt.

The defendant called William A. Owens and proved by him that he was foreman of the grand jury which returned the indictment against the defendant; also that he

was a special agent for the Illinois Bell Telephone Company and supervised criminal prosecutions for that company, handling all matters where coin boxes or collectors were robbed. On cross-examination Owens testified that he did not participate in returning the indictment in the present cause other than to endorse his name as foreman upon the indictment.

The motion made by the defendant to quash the indictment was general and did not in anywise point out any particular matters for the quashing of the indictment. The defendant, by failing to make a motion specifically pointing out the grounds for quashing the indictment or by failing to challenge the array, waived the objection to the qualifications of the grand juror Owens. (*People* v. *Green,* 329 Ill. 576; *People* v. *Hawkins,* 306 id. 29; *People* v. *Munday, 293* id. 191.) The motion in arrest was a general motion. The alleged disqualification of a grand juror cannot be reached by a motion in arrest. Such objection could only be reached by a *motion to quash* or a challenge to the array. (*Berkenfield* v. *People,* 191 Ill. 272.) After pleading to the indictment it was too late for the defendant to object to the qualifications of the grand jurors. (*Hagenow* v. *People,* 188 Ill. 545.) In order to raise the question whether the grand jury was properly constituted or whether any grand juror was disqualified the motion to quash should have specifically pointed out that the grand jury was composed of one or more persons not qualified to sit on the grand jury on the charge made against the defendant. (*Berkenfield* v. *People, supra.*) The trial court did not err in overruling the motion to quash the indictment nor in denying the motion in arrest of judgment.

The prosecuting witness, Schoffen, testified that he was employed by the Illinois Bell Telephone Company as a coin-box collector, and that between 3:15 and 4:00 o'clock on the afternoon of June 16, 1933, he called at a rooming house

at 731 Barry avenue, in the city of Chicago, to make collections from different pay telephones in that building. He stated that as he entered the building he noticed the defendant and Healy sitting on the front steps; that on the way out he again noticed the two men sitting there; that as he went to pass by them the defendant got up, shoved something in the witness' ribs and said, "Back in there; we want the money;" that the witness and the two other men then went into the vestibule, where the witness was forced to give up a grip, and a bill-fold containing $104 that he kept in his inside pocket. Healy told the witness to go back up the steps and not to turn around. He went up to the first landing, paused a short time and came down but saw no one. He then called the police station. He did not observe either of the men while they were robbing him or when they left him.

Officer Joyner arrested the defendant and Healy at the corner of Argyle and Kenmore streets about 3:00 o'clock P. M. on June 26. At that time the two were sitting in a Buick automobile owned by the defendant. Joyner testified that he arrested them on a description that had been furnished. He took Cohen down in Cohen's car while Healy was taken in another machine. At the time he was arrested Cohen asked what the charge was against him, but Joyner did not tell him. The defendant was taken to the detective bureau. Joyner telephoned the telephone company to send in the victims of robberies to identify some of the men that the officers had at the station. There was a show-up of eight men and Schoffen identified Healy and Cohen. On that occasion the officer said to Cohen when Schoffen had identified the defendant, "You heard what the man says." Cohen replied, "Yes." The officer said to Cohen, "Did you stick him up?" to which Cohen replied, "No."

It developed on the trial of this case that Schoffen had never seen the defendant before the 16th of June, if he

did see him on that day. He testified that at the time of the robbery the defendant was dressed in a gray suit. On the cross-examination of officer Joyner it was developed that he, together with officer White, was assigned to all the robbery cases of the telephone collectors, and for every conviction where all the men involved in the robbery were convicted the officers received a reward of $250, and that if not all were convicted the reward was paid in the proportion the number convicted bore to the number involved in the robbery. Schoffen was the only person who identified the defendant as being one of the robbers.

Walter T. Kruze, a telephone collector for the telephone company, testified that he saw the defendant on June 10 and that on that occasion he had on a light-gray suit. It is contended by the defendant that the court erred in permitting this testimony. No objection was made to the admission of the evidence at the time, and the admission of such evidence is not properly before this court for review.

The defendant testified in his own behalf. He denied that he was at the scene of the robbery on June 16 or that he sat on the steps at 731 Barry avenue with another man on June 16. His testimony showed that for a period of thirteen years or more immediately prior to June, 1932, he had conducted a pharmacy business at 4630 Montrose avenue; that he had a university education and was a graduate of a reputable college of pharmacy; that his health had failed and he had not been in business for about a year prior to the robbery. He further testified that on June 16 he called at the home of Mrs. Jacobson, a widow residing near his home, at about 12:30 o'clock P. M. and took her and her son Edward to the Century of Progress; that the three persons arrived at the fair grounds about 1:30 or a quarter of 2:00, entered at the Twenty-third street entrance and remained on the fair grounds until about 9:00 o'clock in the evening, and that during that time he, Mrs. Jacobson

and the son were together constantly. He further testified that he had never had a gray suit within the last five or six years; that he had never seen Schoffen, the prosecuting witness, before the day he saw him at the detective bureau, and that on that occasion he said to Schoffen, "You never saw me before in your life." Schoffen did not deny that this statement was made to him by the defendant.

Edward Jacobson was eight years old and in the third grade of the Budlong school. He testified positively that he went to the fair grounds with his mother and Cohen shortly after lunch on June 16; that he and his mother made their home with Mrs. Hoffman and her husband, Mrs. Hoffman being a sister of Mrs. Jacobson. He told in detail the places visited at the fair, and that he, his mother and the defendant were never apart during the time they were at the fair grounds and did not return until late that night. He fixed the date positively by the fact that his school ended on Friday, June 9, and that he went to the fair grounds that day and went again on the following Friday, and that he had never been to the fair grounds except on Friday until on one occasion after the 16th. The witness was not shaken in anywise upon cross-examination.

Mrs. Mary Jacobson testified that she saw the defendant on June 16, about 12:30 P. M.; that prior to the 16th she had arranged that she and her son would go to the Century of Progress with the defendant on the 16th; that the defendant called at her home about 12:30 P. M., and that she, her son and the defendant rode in an automobile, parked their car at Ninth and Wabash, where they took a street car, and entered the fair grounds at the Twenty-third street gate; that the defendant was never out of her sight during the time they were on the grounds; that they ate their dinners on the grounds and arrived home at about twenty minutes of 11:00 o'clock. She fixed the date because it was the second time that she had taken her son to the fair, the first occasion being just the week before,

on June 9. The original arrangement was that Mrs. Hoffman, the sister, was to go with them to the Century of Progress. The testimony of this witness was not impaired by the cross-examination.

Mrs. Hoffman testified that prior to June 16 she had made arrangements to go with her sister and the defendant on June 16 to the fair grounds but that she did not go; that the defendant came to the house about 12:15 or 12:30 P. M., and Mrs. Jacobson, the son and the defendant left the Hoffman home together on that date and did not return until about 10:30 or a quarter to 11:00 that night. Hoffman testified that while he did not see the defendant on June 16, he knew that arrangements had been made the day before for his wife, sister-in-law and nephew to go to the fair with the defendant on Friday, the 16th; that he fixed the date by reason of the fact that on the 17th of June he took his wife and son to the country. He did not recall ever having seen the defendant wearing a gray suit.

The defendant also produced witnesses who had known him twelve to fifteen years and were acquainted with his general reputation in the neighborhood where he resided and who testified that his reputation as an honest and law-abiding citizen was good. No evidence was offered by the People tending to impeach the reputation of the defendant for honesty, integrity or veracity.

We are reluctant to reverse a judgment of conviction upon the facts, but in the case at bar the guilt of the defendant was not proved beyond a reasonable doubt.

The judgment of the trial court is reversed and the cause is remanded for a new trial. *Reversed and remanded.*