[Crim. No. 963. First Appellate District, Division One.—December 30, 1921.]

THE PEOPLE, Respondent, v. GALEN R. HICKOK, Appellant.

[1] CRIMINAL LAW—OPINION OF MEDICAL EXPERT—BASIS OF.—A medical expert may base his opinion in part upon the statements of his patient, describing his bodily condition and symptoms.

[2] ID.—ABORTION—HEARSAY EVIDENCE—FAILURE TO OBJECT—WAIVER —APPEAL.—In a prosecution for procuring an abortion, assuming that the history of her case, as given by the prosecuting witness to a medical expert out of the presence of the defendant and used by such medical expert in part as the basis of his opinion that the prosecuting witness had been operated upon for the purpose of being relieved of pregnancy, is hearsay and not admissible, that objection cannot be urged for the first time on appeal as a basis for reversal of a judgment of conviction.

[3] ID.—SIMILAR OFFENSES — WHEN EVIDENCE ADMISSIBLE.—In a prosecution for procuring an abortion, evidence of similar and collateral offenses is admissible to rebut the defendant's claim that the operation was innocently performed and for a lawful purpose.

[4] ID.—DENIAL OF GUILT BY DEFENDANT — ADMISSION OF STATE-MENTS—WANT OF PREJUDICE.—The defendant, in a prosecution for procuring an abortion, could not have been prejudiced by the admission in evidence, over defendant's objection, of a part of a statement made by him to a police officer, denying the written statement of the prosecuting witness, denying that he had ever seen her before, denying that he had ever operated upon her, denying that he knew anything about her, where there was evidence in the case which if believed by the jury proved the statements that he had never seen the prosecuting witness or had anything to do with her to be false, in which event the jury could draw a legitimate inference that they were made under a consciousness of guilt, and the part of the statement thus ad-mitted denying the operation was coincident with his plea of not guilty upon which he was standing before the jury.

APPEAL from a judgment of the Superior Court of San Mateo County. Benjamin K. Knight, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Eric J. Rosenstirn for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

KERRIGAN, J.—Defendant was charged by information with violating section 274 of the Penal Code by operating upon the person of Bertha Casteel for the purpose of procuring an abortion. He was tried and convicted, and this appeal is from the judgment and from an order denying his motion for a new trial.

The complaining witness, Bertha Casteel, testified that she was a married woman and the mother of two young children; that during the month of August, 1920, she visited the office of the defendant in San Francisco, desiring to be relieved of a condition of pregnancy. There she met the defendant and Dr. Rheinhart Allen, who placed her upon an operating-table, and, after an examination, confirmed the fact of pregnancy dating from about three months, and informed her she would have to go to a hospital; that an operation would cost fifty dollars, with hospital charges at the rate of five dollars per day. She left the office to arrange to procure the necessary funds, returning the next day, when the defendant and his associate again placed her upon an operating-table and inserted some gauze in her womb. She was thereafter taken, in the defendant's automobile, driven by the defendant's chauffeur, accompanied by the defendant's associate and a cook, to a place called Salada Beach, in San Mateo County, where the defendant conducted a hospital. There she met two young women, Mary Cozzo and Irene Carpenter, patients of the defendant. Two days later the defendant removed the gauze, above mentioned, and operated upon her, using surgical instruments, which operation was one to terminate pregnancy. It was performed without an anesthetic and lasted about five or ten minutes.

Dr. Wood C. Baker, the county physician of San Mateo County, made an examination of the complaining witness on September 3, 1920, from which and a history of the case obtained from the patient he declared that she had been pregnant, subjected to an operation for the procurement of an abortion within a week, and that instruments had

been used for the purpose; that she was in good health, and there was nothing in her physical condition or health which indicated that an abortion was necessary to preserve her health or life.

Police Officer Henry C. Hoar, of the Berkeley police department, acting upon a request from the San Francisco police department, called at the home of the defendant for the purpose of placing him under arrest. The defendant answered the door-bell; he denied his identity; informed the officer that Dr. Hickok was in San Francisco and that he himself was a servant in the house. Later this officer returned, the door this time being opened by the defendant's wife. After some conversation with her the officer took into custody the defendant, who still insisted that he was not Dr. Hickok.

Police Officer James S. Rooney, of the police department of Berkeley and also a medical student, testified that in the presence of other police officers the defendant stated that he was a nurse in the employ of Dr. Hickok, but finally receded from this position and admitted his identity. When Officer Rooney inquired of him if he knew of what crime he was charged, he replied that he did not, "but that he thought somebody had talked too much," and that he realized that sooner or later he would come in contact with the law, but he had to make money to support his wife and family. Asked his opinion on the practice of abortion, he replied that professional abortions should be permitted by law; that they were absolutely essential to society; that "he had a case shortly before this time of a fourteen year old girl . . . who was pregnant . . . and that there was only one thing to do in that case or in a case of that kind, and that was to take the child from that girl; that it would have been a disgrace both to herself and the family if that child had not been removed." "I asked him," said this witness, "concerning his method of operating, and he stated that he enlarged the vagina and curetted the tissues in there, and shortly afterward the miscarriage took place." In answer to a further question defendant said that he did not use an anesthetic, that it took him about five minutes to operate, that he charged for such operations not less than fifty dollars. The witness, continuing, said: "As we approached San Francisco the de-

fendant, learning that I knew Detective Miles Jackson, remarked, 'Well, I wish you would put in a good word for me . . . I have got lots of money . . . I might be able to help you out of a hole some time.' "

Miles M. Jackson, a detective sergeant of the San Francisco police department, testified: "As the defendant stepped off the boat in custody of Officer Rooney he stepped up to me and shook hands with me, and I said, 'Well, Doctor, you are back at your old tricks again,' and he said, 'Well, Mr. Jackson, what could I do?' and he said, 'I had to do something,' and he said, 'I lost all the money in the business that I was in, . . . and I had to get back at the game again.' I said, 'If you keep that up, Doctor, you will find yourself over across the bay with Dr. Card and Dr. Northcott'; and he said, 'Well, Mr. Jackson, you be easy with me. I have a wife and family and I had to do something to support them.' When we arrived at the Hall of Justice defendant put his hand over on my shoulder and he said, 'Mr. Jackson, can't we fix things up among ourselves? You know it costs a lot of money to hire lawyers, and we might just as well keep the money between ourselves," and I said, 'Doctor, forget about that kind of talk. Nothing doing'; and he said, 'You will be easy with me, won't you?' and I said, 'I will treat you fair, Doctor—absolutely fair.' "

Joseph Kindergren testified that he was defendant's chauffeur and that he drove the complaining witness to defendant's hospital, in San Mateo County.

The witnesses Mary Cozzo and Irene Carpenter testified that they had seen the defendant and the prosecutrix together in the hospital at Salada Beach; and Irene Carpenter also testified that the defendant told her that the operation on the prosecutrix was slight, and if she had come sooner her stay in the hospital would have been shorter.

The defendant, when confronted with the prosecutrix, asserted that he had never seen her before.

These two last-named witnesses also testified that the defendant had operated upon them for the same purpose as in the case of Bertha Casteel at about the same time, and Dr. Baker gave corroborating testimony. The evidence further shows that the defendant in performing these

several operations used the same method, namely, first dilating the womb by packing with gauze, and later producing the abortion by the use of instruments and without administering an anesthetic, the operation consuming from five to ten minutes.

The defendant did not take the witness-stand, and the only testimony offered by him was that of Dr. Tilton E. Tillman, who, in effect, said that it was impossible for anyone to say, from an examination of the kind made by Dr. Baker, that the prosecutrix had been pregnant, and that the operation charged to have been performed upon her by the defendant might have been for a certain female disease or ailment; that the operation for such purpose was similar in character, and was accompanied by the same pains and sensations as an operation to terminate pregnancy.

Basing his opinion partly upon a physical examination of the prosecuting witness and partly upon a history of the case given him by her, Dr. Baker testified, in behalf of the state, that the prosecuting witness had recently been operated upon for the purpose of being relieved of pregnancy. The history of the case was given to this witness out of the presence of the defendant; it was remote from the *res gestae,* and the defendant claims it was hearsay and inadmissible. [1] A medical expert may base his opinion in part upon the statements of his patient, describing his bodily condition and symptoms. (*People* v. *Shattuck,* 109 Cal. 673 [42 Pac. 315]; 5 Ency. of Ev. 608.) [2] But assuming for the purpose of this case that the statement made by the prosecuting witness and used by the expert in part as the basis of his opinion was not within this rule and was hearsay, still it appearing, as it does, that there was no objection made at the time on this ground, the defendant cannot now urge it as a basis for reversal.

[3] Defendant also questions the correctness of the admission of the evidence of two similar operations performed by the defendant upon Mary Cozzo and Irene Carpenter, which testimony was admitted for the limited purpose of showing the intent with which the operation in question was performed.

As a rule, upon the trial for a particular crime evidence which tends to show the commission of another and distinct offense by the defendant is inadmissible. To this rule there are, however, several exceptions. According to one line of authorities the state would have the right to introduce such testimony as a part of its case in chief in order to negative the possibility that the operation was necessitated by the condition of health of the patient. (*People* v. *Hagenow,* 236 Ill. 514 [86 N. E. 370]; *People* v. *Northcott,* 45 Cal. App. 706 [189 Pac. 704]; *People* v. *Sindici,* 54 Cal. App. 193 [201 Pac. 975].) In two California cases the supreme court, in denying petitions for their transfer to that court, withheld its approval of this doctrine, the exigencies of those cases not requiring its application. However, it is settled that such evidence is admissible whenever it appears that the defendant claims that the operation was innocently performed and for a lawful purpose. (*People* v. *King,* 23 Cal. App. 259 [137 Pac. 1076].) Here, as before stated, the defendant did not take the witness-stand, and with the exception of the expert testimony of Dr. Baker the evidence introduced by the state is uncontradicted and unimpeached. From such evidence it appears that the prosecutrix believed she was pregnant, and the defendant confirmed her in such belief, telling her that she had been in that condition for three months; that he removed that condition by a surgical operation. This evidence receives corroboration from several circumstances, also disclosed by the testimony, namely, that the prosecuting witness was conveyed to the defendant's hospital at Salada Beach in the defendant's automobile driven by the defendant's chauffeur; that she was there seen with the defendant by the witnesses Mary Cozzo and Irene Carpenter, to one of whom he admitted the performance of an operation upon this woman; and the defendant's denial that he had ever seen her, proven to be false, indicates guilt. Strong corroboration is also furnished by the testimony of Dr. Baker as well as by the defendant's conduct and conversations with the police officers at the time of his arrest, which plainly show a consciousness of guilt, if not tantamount to an admission that he had performed this particular abortion. It is clear that without the testimony of the witnesses

Mary Cozzo and Irene Carpenter to the effect that the defendant had operated upon them for abortion the jury would have been fully justified in returning a verdict against the defendant. But. independent of this view we think the evidence clearly falls within the last stated exception to the general rule that evidence of similar and collateral offenses is sometimes admissible to rebut the claim that the act charged as criminal was innocently performed. As before stated, the only witness called by the defendant was a physician, who testified, in effect, that from the examination of the prosecutrix made by Dr. Baker it would be impossible to say that she was pregnant. He also testified that the operation described by her as having taken place in the hospital at Salada Beach might have been for a certain female ailment, in which event the instruments used and the sensations of pain described by the patient would have been the same as in the case of an operation to arrest pregnancy. In other words, the defendant's sole defense was the inference deducible from this evidence that the operation could have been for an innocent and lawful purpose. This was sufficient to create in the minds of the jury a reasonable doubt of the defendant's guilt; and it was the duty of the state to prove its case beyond such doubt. It follows, therefore, we think, that the evidence was admissible to negative the defense that the operation was for a lawful purpose.

In the case of *People* v. *Seaman,* 107 Mich. 348 [61 Am. St. Rep. 326, 65 N. W. 203], it is said: "Upon principle and authority it is clear that where a felonious intent is an essential ingredient of the crime charged, and the act done is claimed to have been innocently or accidentally done, or by mistake, or when the result is claimed to have followed an act lawfully done for a legitimate purpose, or where there is room for such an inference, it is proper to characterize the act by proof of other like acts producing the same result as tending to show guilty knowledge, and the intent or purpose with which the particular act was done and to rebut the presumption that might otherwise obtain."

Assuming, too, as is sometimes claimed in cases like this, that the evidence would have been proper only in rebuttal, that objection only goes to the order of proof, and its ad-

mission in the people's case in chief would be a matter of no serious moment to the defendant.

[4] Regarding another complaint of the defendant as to alleged improper admission of evidence, it appears that Officer Miles Jackson, without stating their contents, testified that he had read to the defendant the statements of Mary Cozzo and Irene Carpenter and the prosecutrix, and that the defendant denied operating upon any of them. This testimony, so far as it concerned Mary Cozzo and Irene Carpenter, was subsequently stricken out by the court of its own motion, on the ground, doubtless, that the defendant having, as he did, denied that he had performed operations upon those two young women, the accusatory statements standing alone were not competent evidence of defendant's guilt. (*People* v. *Ayhens,* 16 Cal. App. 618 [117 Pac. 789].) The court not only struck out this testimony, but instructed the jury that they should disregard all testimony stricken from the record. The only part objected to on this score and which was not stricken out reads as follows: ''When the statement given us by Mrs. Casteel was read he denied it. . . . He denied ever having seen Mrs. Casteel before, and denied ever having operated upon her and denied knowing anything about her.'' There was evidence in the case which if believed by the jury proved these statements of the defendant that he had ever seen Mrs. Casteel or had anything to do with her to be false; in which event the jury could draw a legitimate inference that they were made under a consciousness of guilt, for it is apparent that if the defendant's dealings with this woman were of a lawful character he could have no reason for denying that he had ever seen her. As to that part of the statement thus admitted denying the operation, its admission could not prejudice the defendant, inasmuch as such denial was included in his plea of not guilty upon which he was standing before the jury.

Other points urged are technical and without substantial merit. The jury was correctly instructed as to the law applicable to the case, and the defendant was fairly tried.

Judgment and order affirmed.

Tyler, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 27, 1922.

All the Justices concurred.

Lennon, J., was absent and Richards, J., *pro tem.,* was acting.