[Crim. No. 3766.   Second Dist., Div. Two.   Apr. 21, 1944.]

THE PEOPLE, Respondent, v. HARRY F. DARBY, Appellant.

Joseph W. Ryan and Theodor Ira Kowan for Appellant.

Robert W. Kenny, Attorney General, Frank Richards, Deputy Attorney General, Fred N. Howser, District Attorney, and Jere J. Sullivan and Thomas W. Cochran, Deputies District Attorney, for Respondent.

WOOD (W. J.), J.—Defendant was accused by information of the violation of section 274 of the Penal Code, in that he feloniously employed an instrument upon Angelina Sylvia with the intent to bring about a miscarriage. A jury returned a verdict finding him guilty and he has appealed from the judgment of conviction and from an order denying his motion for a new trial.

Defendant contends that the trial court erred to his prejudice in admitting evidence that on two occasions prior to the date of the abortion charged in the complaint defendant had performed abortions upon a Mrs. White and a Mrs. Brunton. The prosecution concedes that as a general rule evidence of the commission of crimes other than that charged in the information is inadmissible but claims that in this case the evidence of Mrs. White and Mrs. Brunton was admissible to prove the intent of defendant at the time he treated Mrs. Sylvia.

From the testimony of Mrs. Sylvia it appears that she had had an excessive menstrual flow for many years; she had consulted ''many doctors in Massachusetts'' before coming to California. In October of 1942 she consulted a Dr. Woods, a medical doctor, concerning her menstrual condition and on January 5, 1943, Dr. Woods performed an operation consisting of cauterization of the cervix of her uterus. She started to flow on January 15, 1943, and continued to flow for about eight days. She first visited defendant on Febru-

ary 22, 1943. She had not had sexual intercourse between the date of the operation by Dr. Woods and her visit to defendant, nor for some time prior thereto. Mrs. Sylvia further testified that she called upon defendant on February 22, 1943, for the purpose of having an examination and if she was found to be pregnant her intention was "not to have it." Defendant examined her and informed her that she was pregnant and had been pregnant for about three months. She asked him, "Can you do anything about it?" and he replied, "Yes," and said that his fee would be $75.

Mrs. Sylvia went to her home, secured $75 and returned to the office. After her clothing was removed defendant placed her upon a table and covered her with a sheet. She was on the table for about five minutes at which time she felt a "very small pinching sensation" in the region of her vagina. She went home and was told to return in two days. She again went to defendant's office on February 24, removed her clothing and was again placed upon the table. Defendant's wife came in with a cloth in her hand and placed it over Mrs. Sylvia's face. The cloth "smelled like ether almost." Mrs. Sylvia became unconscious and when she regained consciousness she was wearing a sanitary pad and could feel that she was flowing. She had a dull pain in the lower part of her abdomen. After about two hours she dressed and defendant took her home. He told her to call him by telephone if she did not feel well during the night. Mrs. Sylvia did not see or feel any instrument used upon her and no medicine was given. She did not feel any foreign body inserted into her vagina.

Defendant called upon Mrs. Sylvia at her home the following morning and examined her and found that she was not doing well. He took her to his office where she remained several hours and in the evening defendant and his wife took Mrs. Sylvia to her home in defendant's automobile. At that time defendant informed Mrs. Sylvia and her husband that she would have to go to a hospital. An ambulance arrived later and Mrs. Sylvia was taken to the Park View Hospital.

Defendant testified that Mrs. Sylvia engaged his services to treat her for profuse and painful menstruation. On the occasion of her first visit, February 22, she told him that she had had this trouble over a long period. He gave her a bimanual examination and discovered that she had a retroverted uterus. She was flowing at the time. He told her

that he probably could effect a cure and that it would take from six weeks to two months, for which his charge would be $75, which would cover the costs of laboratory tests. Mrs. Sylvia said she would have to talk the matter over with her husband. She returned and defendant commenced the treatment. He swabbed the uterus and the cervix of the uterus. In doing the swabbing he used water in which he had put a small amount of ''B.M.120, a vitamin mineral products,—ferric sulphate.'' This is a substance which is in common use by chiropractors as well as by physicians and osteopaths. He used a vaginal speculum, frequently used by chiropractors and others engaged in the healing art, which enables them to obtain a view of the uterus. He did not administer an anesthetic or give any medicine and did not use any instrument to bring about an abortion. Two days later defendant found Mrs. Sylvia to be in bad condition and he told her and her husband that he did not know what was wrong with her and that she should get the services of a physician and surgeon. They did not know of any physician to employ and he gave them the name and telephone number of Dr. Joe Farber. Mr. Sylvia told defendant that he was without money and defendant stated that he would give him back what he had been paid and thereupon he gave Mr. Sylvia $80. At a later time Mr. Sylvia begged for more money to pay hospital expenses, again claiming that he was without means, and defendant loaned him $200.

Dr. Joe Farber, an osteopathic physician, testified that in the evening of February 25th he received a telephone call from Mr. Sylvia and promptly dispatched an ambulance to bring Mrs. Sylvia to the hospital. When this witness saw Mrs. Sylvia in the hospital she was in a mild state of shock and showed evidences of a recent blood loss. In examining her eyes he found the membranes were blanched and her fingertips were blanched. Her extremities were cold and she was perspiring. Dr. Farber did not make an examination at that time, but after talking with Mrs. Sylvia called the police department and later talked with one of the officers who came in answer to his call. Dr. Farber explored the interior of the uterus with a blunt and rounded instrument known as sponge forceps and ''found an area in the right forepart of the uterus that was very suspicious of a perforation.'' About midnight Mrs. Sylvia was taken to the minor

surgery room where a curettement was performed under an anesthetic. The following morning Dr. Farber again examined Mrs. Sylvia and performed a major operation, removing the uterus down to the cervix. He found a perforation in the uterus which in his opinion had been made with some sharp instrument. In the abdominal cavity he found segments of fetal spine near the perforation in the uterus. The uterus had the appearance of a pregnancy of about twelve weeks' duration. In Dr. Farber's opinion the condition which he found was "an incomplete abortion with perforation; pelvic peritonitis; traumatic removal of a portion of an appendix, mesentery, and the serosa of a small intestine caused by a metal instrument." This opinion was based in part on a laboratory report which, as will elsewhere be seen, was improperly received in evidence.

An investigator from the police department testified concerning the finding in defendant's office of a number of surgical instruments and hypodermic needles. The use of these various instruments was described by Dr. Farber.

Both Mrs. Brunton and Mrs. White testified that defendant had performed abortions upon them. Mrs. White testified that defendant had performed an abortion upon her and that in so doing he had inserted an instrument. Mrs. Brunton gave like testimony but added that no anesthetic was used.

Defendant bitterly complains of the ruling of the trial court admitting the testimony of Mrs. Brunton and Mrs. White, claiming that he was unlawfully deprived of his constitutional right to be tried only for the offense charged in the information and that he had had no opportunity to prepare a defense against the additional charges. ▓ It is well established that evidence of the commission of offenses other than the offense charged in the information may be received in evidence, under an exception to the general rule prohibiting such evidence, where proof of the circumstances of the other offenses "logically tends to prove any fact necessary or pertinent to the proof of the crime for which the defendant is being tried." (*People* v. *Morani*, 196 Cal. 154, 158 [236 P. 135].) In the Morani case the charge was murder growing out of an operation to bring about a miscarriage and the court in discussing the authorities referred to *People* v. *Northcott*, 45 Cal.App. 706, 708 [189 P. 704], stating that the Supreme Court in denying a hearing

had under the circumstances of that case withheld an expression of opinion concerning the admissibility in evidence of abortion operations performed by the defendant previous to the offense for which he was on trial. The court pointed out that in the Northcott case defendant had denied that he had given any treatment whatever to the woman in the case. The court quoted with approval from *People* v. *Seaman,* 107 Mich. 348 [65 N.W. 203, 61 Am.St.Rep. 326], where it was held that it is proper to characterize the act for which the defendant is on trial ''by proof of other like acts producing the same result as tending to show guilty knowledge and the intent or purpose with which the particular act was done, and to rebut the presumption that might otherwise obtain.''

From the Morani case and others there cited, it is evident that the prosecution may establish the intent with which defendant performed an operation in the case on trial by proof that on previous occasions he had used the same means to produce miscarriages. However, this does not mean that in all trials for abortion proof may be introduced of the performance of other abortions merely to show that it is more probable that the defendant is guilty of the crime for which he is on trial. There must be reasonable ground to argue that the intent with which the treatment was given in the case on trial was shown to be criminal by proof of the circumstances of the other offenses. Such a situation would be presented if it had been proved that the defendant in the case on trial had inserted into the vagina a certain surgical instrument under circumstances leaving the question of his intent in so doing open to doubt, and if it was also shown that on the other occasions a similar instrument had been similarly used for the purpose of bringing about a miscarriage. But we have no such situation here. No testimony was given by Mrs. Sylvia or by defendant Darby that any instrument was used. On the other hand, according to the testimony of defendant, the treatment given by him to Mrs. Sylvia was such as is customarily and frequently given to female patients. It is common knowledge that the methods claimed to have been used by defendant are those in general use by members of his profession. The conclusion is inescapable that the testimony of Mrs. Brunton and Mrs. White was placed before the jury for the sole purpose of leading them to believe that it is more probable that defendant is guilty of the crime charged in the information

because he had, according to their testimony, previously performed abortions upon them. Respondent relies upon *People v. Coltrin,* 5 Cal.2d 649 [55 P.2d 1161], as authority for the introduction of evidence concerning abortions other than the one charged in the information. In the Coltrin case, however, the facts were not similar to the facts in the instant case, for it was there established that the defendant had placed the woman under an anesthetic and had explored her uterus with an instrument. The decision of the court does not show what proof was offered in establishing the circumstances of the performance of the other two abortions.

The latest expression of our Supreme Court on the subject of the admission of evidence of a crime other than that charged in the information for the purpose of proving intent is to be found in *People v. Albertson,* 23 Cal.2d 550 [145 P.2d 7], where the court at page 577 said: "The trial court, however, should be guided by the rule that such proof is to be received with 'extreme caution,' and if its connection with the crime charged is not clearly perceived, the doubt is to be resolved in favor of the accused, instead of suffering the minds of the jurors to be prejudiced by an independent fact, carrying with it no proper evidence of the particular guilt." In the Albertson case the defendant was charged with the murder of one Kmetz by sending poison to him and the trial court received evidence that about six weeks prior to the receipt of the poison a vicious assault had been made upon Kmetz with the handle of a pickaxe. The action of the trial court in receiving the evidence was held to be erroneous because the evidence of the previous offense, which was circumstantial, did not sufficiently point to the defendant as the assailant. The decision in the Albertson case indicates the attitude of the Supreme Court in safeguarding the right of an accused person to be placed on trial for the offense only with which he is charged in the information. We can see no reason why the right of a defendant in an abortion case should not be as carefully guarded.

The trial court also erred in admitting in evidence a letter from Dr. Woods written to Dr. Farber in which the result of Dr. Woods' examination of the uterus which had been removed from Mrs. Sylvia was set forth and in which Dr. Woods gave his findings indicating that the uterus had been ruptured and fetal matter found therein. Respon-

dent argues that the point may not be presented at this time for the reason that no proper objection was made to the introduction of the letter. The record discloses, however, that defense counsel objected to the introduction of the letter as "incompetent, irrelevant and immaterial; no foundation laid for it whatsoever." The letter should have been excluded as being hearsay and for the further reason that no foundation had been laid to establish Dr. Woods' qualifications as a pathologist. We do not feel inclined to deprive defendant of his right to demand that he be tried with competent evidence because of the oversight of his counsel in the midst of a difficult trial to remember that he should add the word, hearsay, to the statement of his objection.

While cross-examining defendant the prosecutor questioned him about several cards which had been found in his office, upon which were written the names of several women and notations as to the fees charged. Defendant was also asked if he had performed abortions on the women named, to which he replied in the negative. The court instructed the jury not to draw any inferences from the questions asked "as to whether the defendant performed any illegal operation in any of these particular cases" but permitted the prosecutor to continue making inquiries concerning the treatment given the women and the fees charged. Defendant had not been asked anything whatever concerning these cards on direct examination and the questions asked by the prosecutor on this subject were clearly improper. (*People* v. *Gilliland*, 39 Cal.App.2d 250, 260 [103 P.2d 179].) The instruction of the court to the jury to disregard part of the subject matter of the inquiries did not efface the harm which had already been done. The further questioning concerning the cards, which the court permitted, could only be for the purpose of inducing the jury to believe that defendant was in the habit of performing abortions. A similar line of questions was held improperly admitted in *People* v. *Berg*, 96 Cal.App. 430, 435 [274 P. 433], a case in which the charge was murder as the result of abortion, where the court said: "If we grant for the sake of argument, what we are far from deciding, that other crimes may be proved in cases of this nature in order to show system or intent, the questions cannot be justified on that ground, as 'it is not competent for the prosecutor to introduce irrelevant evidence falling short

of crime and designed merely to degrade and prejudice the defendant in the minds of the jury' (8 Cal.Jur. 59).''

█ The trial court erroneously gave to the jury the following instruction: ''You are further instructed that section 11476 of the Health and Safety Code of the State of California in ·force at the times charged in the information provides as follows: 'Section 11476. No person other than a physician, dentist, osteopath, chiropodist, registered nurse, veterinarian or pharmacist, shall have in his possession a hypodermic syringe or hypodermic needle, or any instrument or contrivance used for the same purpose, unless it was purchased by the person with a written order signed by a physician, dentist, chiropodist, veterinarian, or osteopath.' If you should find from the evidence that the defendant, Harry F. Darby, at the times charged in the information, was a duly licensed chiropractor, but was not a physician and surgeon, dentist, osteopath, chiropodist, registered nurse, veterinarian or pharmacist, and at said times used or had in ·his possession under circumstances indicating to you that he had used surgical instruments or administered hypodermic injections of drugs upon Angelina Sylvia, then this is a circumstance which you may take into consideration in determining the intent with which he treated said person, if you find that he did so treat her.''

This instruction was apparently given on the theory that evidence of defendant's possession of certain hypodermic needles was proof of his guilt of the offense for which he was on trial. But the needles were packed in their original cellophane. No evidence was presented that defendant had used any of the needles and there was no occasion for an instruction by the court that the jury should consider the circumstance of the needles if they should find that defendant ''had used surgical instruments or administered hypodermic injections of drugs upon Angelina Sylvia.'' Defendant was not on trial on a charge of violation of the Health and Safety Code. The violation of a section of the Health and Safety Code by the improper possession of hypodermic needles should not have been shown for the purpose of proving an abortion in the absence of evidence that the needles had been used in the treatment given Mrs. Sylvia. In *People* v. *Marineau*, 55 Cal.App.2d 893 [132 P.2d 22], which is relied upon by respondent, evidence was introduced that the defendant had used a hypodermic needle in treating the woman involved.

We cannot sustain the contention of defendant that the evidence is insufficient to support the conviction. The record contains sufficient evidence to support the conviction, from a legal standpoint, if the trial had been conducted without prejudicial error. But we cannot hold that a different verdict would have been improbable if the errors above mentioned had not been committed.

The judgment and the order denying a new trial are reversed and the cause is remanded for a new trial.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied May 2, 1944, and appellant's petition for a hearing by the Supreme Court was denied May 18, 1944.