[Crim. No. 3832. Second Dist., Div. Two. Dec. 7, 1944.]

THE PEOPLE, Respondent, v. AMOS FRANKLIN CLAPP, Appellant.

198

A. H. McConnell for Appellant.

Robert W. Kenny, Attorney General, Frank Richards, Deputy Attorney General, Fred N. Howser, District Attorney, and Jere J. Sullivan and Robert Wheeler, Deputies District Attorney, for Respondent.

MOORE, P.J.—Appeal from a conviction of murder in the second degree and from the order denying a motion for a new trial.

The victim of appellant's crime was Doris Jean Branch, eighteen years of age. She had been married to Harvey Branch on November 21, 1943. Pursuant to an appointment made by her father she called at the office of appellant, a chiropractor of Long Beach. She employed him to effect an abortion. He had told Doris' father that a miscarriage could be produced either by force or by curettement. She was in good health, did all of her household work, danced and engaged in other sports. At the time of her first call upon appellant he made a vaginal examination, told her that she was pregnant and advised a forced miscarriage because of her age and physical condition. He demanded a fee of $75 and designated the following day for the operation. On January 6th at his office he placed her on a table, dilated her vagina with a speculum, and ostensibly inserted a brown liquid into her vagina. At once she suffered vomiting and cramps in the stomach. He told her that everything would pass within twenty-four to thirty-six hours and to exercise in the meantime. On the following day she suffered a miscarriage at the home of her parents in Wilmington. From that day she steadily declined. On the ninth, finding her with chills, Clapp advised that "a little piece" did not pass; he would have to "go in and clean it all out." Although not licensed to practice surgery or to prescribe drugs, with a scissors-like instrument he removed portions of the placenta and clots of blood. On the tenth with a rising temperature she was vomiting. He announced that she had a new kind of "flu" and gave her sulfa pills. On the eleventh, after appellant had administered a hypodermic injection in her arm, her father called in a physician who promptly ordered the girl to a hospital where she died on January 20th.

The sufficiency of the evidence to support the conviction is not questioned. Only three assignments of error at the trial are presented as bases for a reversal, namely: (1) refusal to strike the allegation of a prior conviction of an abortion, a felony; (2) admitting the evidence of that crime; (3) denying appellant's motion to strike such proof.

The district attorney was required to allege the former conviction. (Pen. Code, §§ 969, 969a; *In re Boatwright*, 119 Cal.App. 420, 424 [6 P.2d 972].) Section 969 declares "all

200

known previous convictions whether in this state or elsewhere, must be charged." Section 969a provides that when it is discovered that a pending indictment or information does not charge all prior felonies of which the defendant has been convicted "said indictment or information shall be forthwith amended to charge such prior conviction or convictions."

Appellant contends that at the time of the filing of the information and at the time of the trial he had not been convicted because his judgment of conviction in the former case was on appeal. This contention has been disposed of repeatedly. (*People* v. *Ward,* 134 Cal. 301 [66 P. 372] ; *Ex parte Brown,* 68 Cal. 176 [8 P. 829] ; *People* v. *Acosta,* 115 Cal.App. 103 [1 P.2d 43].) ■ The jury, or the court where a jury has been waived, convicts the accused. (Pen. Code, §§ 689, 1157.) ■ Conviction does not mean the judgment based upon the verdict, but it is the verdict itself. (*People* v. *Ward, supra,* 308.) It is the ascertainment of guilt by the trial court. (*People* v. *Acosta, supra.*) ■ A person has been convicted even though the judgment should be suspended during appeal (*Ex parte Brown, supra*) or while the convict is on probation. (*People* v. *Christman,* 41 Cal.App.2d 158 [106 P.2d 32].) In the case of *People* v. *Braun,* 14 Cal.2d 1 [92 P.2d 402], it was held that although an adverse judgment in a former case was on appeal a prior conviction might be shown for the purpose of impeachment. ■ A judgment though not final may be proved for any purpose for which it is effectual. (*People* v. *Braun, supra; McKannay* v. *Horton,* 151 Cal. 711, 721 [91 P. 598, 121 Am.St.Rep. 146, 13 L.R.A.N.S. 661].) The courts of other jurisdictions have likewise upheld the practice of alleging the prior conviction even though the judgment based thereon was on appeal at the time of the trial for the second offense. (*State* v. *Eisminger,* 124 Kan. 464 [260 P. 661] ; *State* v. *Smith,* 128 Ore. 515 [273 P. 323] ; *People* v. *Morlock,* 234 Mich. 683 [209 N.W. 110] ; *Shaffer* v. *State,* 124 Neb. 7 [244 N.W. 921].)

■ There was no error in receiving evidence of the former felony because the "testimony fails to show any similarity in the means used to produce" the two miscarriages. The defendant's contention and testimony were that he treated the deceased for gonorrhea by injecting a "caroid solution" into the vagina and that her miscarriage was the result of a number of contributing factors including his "use of the speculum" and a cervical infection of the uterus. To rebut

such testimony and the inference of innocency fairly deducible therefrom, the prosecution properly undertook to show his means and method employed in causing one Mrs. Huntley to miscarry in 1943, for which very act he had already been convicted. According to the testimony of Mrs. Thurman, who witnessed that operation, his conduct in causing the Huntley abortion closely parallels his behavior in dealing with Doris Branch. He called at Mrs. Huntley's country home where that lady was in good health and was attending to her household duties. He improvised a place for the operation by using the dinette table. He went into the kitchen and boiled his instruments. They were identical in appearance with those employed on Mrs. Branch. She identified the speculum and the curette as two of the devices used on Mrs. Huntley; also one like a scissors, one that was curved with teeth, and one with holes in the end. He began with Mrs. Huntley by inserting the speculum and used the others in the course of the operation. He told Mrs. Thurman that his patient was ''about 11 weeks along.'' He wrapped the ''spongy-looking stuff'' and ''bloody mess'' in the papers on the table and carried them away to be destroyed. He asked for and received $50 and told her not to call a doctor or ''anybody else.''

But for the Thurman testimony defendant might have created a reasonable doubt in the minds of the jury by urging the inference that his treatment of deceased was for a lawful purpose. (*People* v. *Hickok,* 56 Cal.App. 13 [204 P. 555].) Where a felonious intent is an essential ingredient of the crime and the accused claims that his act was accidentally, mistakenly or innocently done, or where the circumstances might support an inference that the act was lawful, it is proper practice to rebut such claim or inference by evidence of other criminal acts done by the accused, in which he used similar means and which produced the same result, in order to prove the criminal purpose that actuated the deed for which the prisoner is on trial. (*People* v. *Darby,* 64 Cal.App. 2d 25 [148 P.2d 28] ; *People* v. *Hickok, supra,* p. 19.) In such circumstances evidence of another crime is relevant if it logically tends to prove the intent of defendant in the offense under investigation although it might prove a distinct crime and prejudice the defendant before the jury. (*People* v. *Williams,* 6 Cal.2d 500, 502 [58 P.2d 917].) Such proof is especially permissible where the act charged is not in itself

proof of the required criminal intent and other evidence of intent is necessary to complete the proof. (*People* v. *Coltrin*, 5 Cal.2d 649, 656 [55 P.2d 1161].)

The contention that the Thurman testimony was inadmissible because the abortion of Mrs. Branch followed the injection of a fluid while the Huntley operation was with "instruments" and therefore was not accomplished by the same means, would lead us into error. It is not necessary to prove that the prior crime was, in the manner of its accomplishment, identical in every detail with that on trial. In both instances the defendant requested secrecy and that no other doctor be called. Both women were pregnant and in good health prior to his interference. From each he removed the placenta, blood and foetal remains. Because he inserted the corrosive fluid into the uterus of Doris to dissolve its contents does not make the two acts so dissimilar as to render evidence of the prior crime incompetent as proof of his felonious intent in the subsequent operation. The use of the chemical for dissolving the foetal contents is of recent origin.

In appellant's incipient act he employed instruments on Doris: the speculum to dilate her vagina, the catheter to conduct the "caustic drug" from a glass jar to the uterine cavity. Although defendant testified that he merely put the solution into her vagina, from expert testimony it was established that the chemical was poured in upon the foetus. The autopsy disclosed that the uterus was rotted; that the canal and cervix had been burned by the malignant fluid; that steel implements also had been used on the unfortunate girl.

The word "instrument" was not intended to apply only to scissors, forceps and speculum, but also to any means which might be used to effect a miscarriage. (*Wilson* v. *State*, 36 Okla.Cr. 148 [252 P. 1106].) The speculum and the catheter are comprehended within the term. Appellant's free use of instruments on Doris in completing the abortion is indicated by his further explorations after concluding that a part of the placenta had not been expelled. He opened the organ and with uterine forceps extracted the dead tissue and with ring forceps removed clots of blood. He thereby finished an incomplete abortion (see Lee's "The Principles and Practice of Obstetrics" (4th ed.), p. 451) which he had clumsily attempted by injecting drugs. Every act done in furtherance of his unlawful purpose was an integral part of the whole unlawful transaction. (*State* v. *Tippie*, 89 Ohio St. 35

[105 N.E. 75].) Since his felonious purpose in using the chemical and the instruments on Mrs. Branch was proved by Mrs. Thurman's experience, her testimony was properly received. (*People* v. *Albertson*, 23 Cal.2d 550 [145 P.2d 7]; *People* v. *Darby*, 64 Cal.App.2d 25 [148 P.2d 28].)

Inasmuch as the Thurman testimony was competent and bore upon the primary issue of intent, the court correctly denied the motion to strike it from the record.

The judgment and the order denying the motion for a new trial are affirmed.

Wood (W. J.), J., and McComb, J., concurred.