[Crim. No. 4774.   Second Dist., Div. Two.   June 19, 1952.]

THE PEOPLE, Respondent, v. MORRIS GREEN, Appellant.

Warner, Peracca & Cowan and James O. Warner for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

McCOMB, J.—Defendant was found guilty on two counts of having committed abortions. From a judgment and order denying his motion for a new trial, he appeals.

*Facts*: The evidence disclosed that Molly Simon died as a result of an induced abortion. Deceased's sister testified she accompanied her sister to defendant's office where decedent stated to defendant she was pregnant and did not want to have a baby; defendant advised Molly Simon to have a test made to determine whether or not she was pregnant. Decedent's husband testified that at a subsequent date he took her to defendant's office and paid the latter's receptionist $250; he left decedent in defendant's office, went out and purchased a sandwich and at the direction of the receptionist a sanitary napkin belt; after about three hours he took decedent from defendant's office and on the way home she complained of a pain under her armpit and in her right chest; upon complaints of his wife he had called defendant's office and on instructions of the nurse gave his wife an aspirin tablet and a pill; he again called defendant's office and on the third call talked with defendant; later his wife awakened with a gurgling sound in her throat and he called Dr. Effron, but upon this doctor's arrival at their home the witness's wife had passed away.

Mr. Simon also testified that prior to going to defendant's office his wife was in good health. There was additional testimony that defendant had voluntarily admitted in the presence of police officers he had performed a curettement upon the deceased. He also stated he had performed a therapeutic abortion.

Esther Yontz testified that on March 10, 1951, she saw defendant at his office; defendant examined her; her former husband paid defendant $200 and thereafter Esther Yontz disrobed, put on a nightgown, was given a hypodermic injection by defendant; she then lay dazed but not asleep upon an operating table in his office. Then, according to the testimony of Esther's former husband, defendant put a heavy metal instrument in her vagina. This instrument looked like a large metal spoon with a ball on the end. Defendant scraped material and blood from the vagina. Thereafter Esther left the operating table and was told to go into

an anteroom and lie down which she did for about an hour. Defendant admitted he did a pelvic examination on Mrs. Yontz but denied that he operated upon her.

*Questions*: First: *Was the district attorney guilty of misconduct in the presentation of evidence that defendant had under similar circumstances committed abortions upon other women than those named in the information?*

*No.* ▮ The correct rule is stated by Mr. Presiding Justice Moore in *People* v. *Clapp*, 67 Cal.App.2d 197, 201 [7] [153 P.2d 758], thus: "Where a felonious intent is an essential ingredient of the crime and the accused claims that his act was accidentally, mistakenly or innocently done, or where the circumstances might support an inference that the act was lawful, it is proper practice to rebut such claim or inference by evidence of other criminal acts done by the accused, in which he used similar means and which produced the same result, in order to prove the criminal purpose that actuated the deed for which the prisoner is on trial." (See, also, *People* v. *Coltrin*, 5 Cal.2d 649, 656 [3] [55 P.2d 1161].)

▮ In the present case the testimony offered and received in evidence fell within the foregoing rule, since such evidence disclosed that previous acts of a similar nature under similar circumstances had been committed from which the jury could reasonably infer defendant in the present case had performed the acts with which he was charged with a criminal intent.

*People* v. *Darby*, 64 Cal.App.2d 25 [148 P.2d 28], relied on by defendant, is here inapplicable because in the cited case evidence was received to the effect that defendant had committed abortions on two other women with "a certain surgical instrument." In the Darby case however there was no evidence that defendant had used any surgical instrument upon the patient involved in the abortion for which he was then being tried. (See *People* v. *Thompson*, 69 Cal. App.2d 80, 90 et seq. [158 P.2d 213].)

▮ There is likewise no merit in defendant's contention that after he had taken the witness stand the district attorney erred on cross-examination by asking defendant whether he had asked Mrs. Abrams why she brought patients to him when they wanted abortions, and whether he told her he performed such operations. Defendant admitted on direct examination that Mrs. Abrams had brought a patient to his office, that the patient wanted an abortion and Mrs. Abrams had told him she had recommended the patient to him. Such

questions were entirely within the scope of direct examination concerning the intent of defendant when he made the examination and later operated upon the two women whom he was charged in the present information with aborting. (See Pen. Code, § 1323; *People* v. *Buckley,* 143 Cal. 375, 388 et seq. [77 P. 169].)

■ Neither is there any merit in defendant's complaint that it was improper to receive the testimony of Officer Bates relative to a conversation with defendant after his arrest. The conversation contained admissions of defendant and certain accusatory statements made to defendant. Accusatory statements are admissible, especially when the accused fails to act as an innocent person would be expected to act in such circumstances. In the instant case defendant did not deny the accusatory statements; therefore they were properly received in evidence. (*People* v. *Ramsey,* 83 Cal.App.2d 707, 724 [16] [189 P.2d 802].)

■ Testimony of Officer Bates relative to a conversation between Mr. Simon and defendant on the day of the death of Molly Simon, in which Mr. Simon stated he had talked to defendant about his wife and defendant had stated women came to him and offered him large sums of money to perform abortions, but that he did not perform such operations, was clearly admissible. The conversation was in defendant's presence, was relevant and material to the intent with which defendant performed the operation upon Mrs. Simon and could not be prejudicial to him since the statement disclosed defendant had stated he did not perform abortions.

■ Defendant likewise claims it was error to permit Officer Bates to testify about a conversation with defendant in which it appears defendant said there was no law requiring a doctor to consult other physicians prior to performing a therapeutic abortion, but it was merely the practice to do so. No error is discernible in the admission of this evidence since defendant, when on the witness stand, stated that in substance the testimony given by Officer Bates was correct.

■ Defendant urges certain other trivial errors in the reception of evidence, such as it was error for the district attorney to attempt to lay a foundation for the impeachment of defendant's nurse by showing prior inconsistent statements. Such evidence was clearly admissible. (Code Civ. Proc., § 2052.) An examination of the record discloses prejudicial error was not committed by the district attorney in the offering of evidence, nor was there any prejudicial error committed by the trial judge in the reception of evidence.

■ Second: *Did the trial court commit prejudicial error in instructing the jury as follows?*

"The essence of the offense of abortion is the intent to procure a miscarriage. If a person performs an act in violation of the law against abortion, it is not a defense that the woman may previously have herself attempted to bring about a miscarriage."

*No.* The foregoing instruction was correct. ■ It is not necessary in order to constitute the crime of abortion in California that the woman upon whom the act is perpetrated be in fact pregnant. (*People* v. *Ramsey,* 83 Cal.App.2d 707, 717 [5a] [189 P.2d 802]; *cf. People* v. *Rhoades,* 93 Cal.App. 2d 448, 450 et seq. [209 P.2d 33].)

■ Third: *Did the trial court err in refusing defendant's request to instruct the jury as follows?*

"You are hereby instructed that Penal Code Section 274 does not apply to treatments by a physician or other persons to any woman who is in the actual process of aborting a pregnancy."

*No.* In view of the cases just cited it is obvious that if the necessary criminal intent were present defendant would be guilty of having committed abortion whether the victim was actually in the process of aborting or not.

■ Fourth: *Was there substantial evidence to sustain the jury's finding that defendant was guilty of committing an abortion on Esther Yontz?*

*Yes.* Both Mrs. Yontz and her former husband testified to the facts set forth above relative to defendant's attempt to abort her. Such evidence shows that the complaining witness's testimony, conceding that she was an accomplice, and her husband's testimony, likewise conceded to be an accomplice, was corroborated by the admissions of defendant, and his failure to deny accusatory statements made in his presence. Of course the credibility and weight to be given to the testimony were questions to be determined by the jury in the first instance and the trial judge on the motion for a new trial latterly.

Judgment and order are and each is affirmed.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied July 1, 1952, and appellant's petition for a hearing by the Supreme Court was denied July 17, 1952. Schauer, J., was of the opinion that the petition should be granted.