THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MARGARITA GARCÍA GARAY, Defendant and Appellant.

No. 15944. Argued April 11, 1955.—Decided June 14, 1955.

[4] Article II, Section 11.

[5] Article II, Section 12.

*Santos P. Amadeo* for appellant. *José Trías Monge, Attorney General,* and *Rafael L. Ydrach Yordán* and *Ramón Olivo Nieves, Fiscal, and Special Fiscal of the Supreme Court,* respectively, for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Appellant was charged jointly with Amalia Ortiz Fuentes and Rosa Lydia Ortiz with a violation of §§ 1 and 2 of Act No. 136 of 1937 (Sess. Laws, p. 294), in that on or about November 24 to 29, 1953, "defendants Amalia Ortiz Fuentes and Rosa Lydia Ortiz unlawfully, wilfully, and with the criminal intent to procure a miscarriage upon Berzaida Torres Reyes, a pregnant woman on that date, prescribed, advised, and induced the said Berzaida Torres Reyes to submit to an abortion and defendant Margarita García Garay, with the use of medico-surgical instruments and mechanical agents, dilated the genital organs procuring an abortion upon the said Berzaida Torres Reyes, without any of these acts of the above-mentioned defendants having been advised or prescribed by any physician duly authorized to practice medicine in Puerto Rico for the therapeutic purpose of preserving the health or life of the said Berzaida Torres Reyes."

The jury which tried the case found Margarita García Garay guilty of the offense charged and the other codefendants not guilty. The former appealed from the judgment rendered against her and in her brief charges the trial court with the commission of two errors.

For a better understanding of these errors which we will take up later, it is necessary to make a brief résumé of the evidence. The *Fiscal* of this Court makes a correct summary of the evidence of the People as follows: "The evidence of the prosecution tended to prove that in November 1953, Berzaida Torres Reyes, who had been pregnant for three months by Adail Ortiz, was living with him in the house of his mother, Amalia Ortiz, and his sister, Rosa Lydia

Ortiz. (Tr. Ev. pp. 16, 17, 18.) Amalia Ortiz Fuentes was receiving $120 as a dependent of her son Adail, who was a soldier (Tr. Ev. p. 20), and fearing to lose that money she was anxious for Berzaida not to have a child. So, on November 24, 1953, they took her to Margarita García Garay's house in Bayamón for the purpose of procuring an abortion. (Tr. Ev. p. 21.) There Margarita inserted some rubber tubes and a tampon into her. (Tr. Ev. p. 22.) Berzaida returned to Naranjito and again on November 27 Amalia and Rosa Lydia Ortiz sent her to Bayamón. (Tr. Ev. p. 25.) For the second time Margarita inserted some rubber tubes and tampons and she had a miscarriage. (Tr. Ev. p. 26.) On November 30, 1953, Dr. Roque C. Nido examined her and found that a criminal abortion had been performed. (Tr. Ev. pp. 60, 61, and 62.) Margarita García Garay received $30 for her work. (Tr. Ev. p. 27.)"

The evidence for the defense consisted of two affidavits of Berzaida Torres Reyes to the effect that she herself had procured an abortion by taking a certain medicine and injections, and that she had been forced to testify against the defendants and threatened by the prosecuting attorney. Lcdo. Fonfrías also took the stand to refute the statements made by Berzaida as to how she had made an affidavit before Lcdo. Marrero Ledesma.

 In the first assignment of error appellant contends that the trial court "erred in permitting the aggrieved party, Berzaida Torres Reyes, to testify on other abortions allegedly performed by the defendant."

The court, over defendant's objection, permitted the aggrieved party, Berzaida Torres Reyes, to testify that Rosa Lydia Ortiz had told her that Margarita García Garay had performed two abortions upon her person and nothing had happened.[1] The court also permitted this same witness to testify, over defendant's objection and while she was describ-

---

[1] The incident, as revealed by the record, is as follows:
"Prosecuting Attorney:

ing the room where the abortion was performed, that appellant performed an abortion on another young lady who was seated next to her.[2]

On previous occasions we have held the general rule to be that in a criminal prosecution the defendant may not be tried for any offense other than that charged in the information, and that, therefore, evidence of other independent offenses committed by the defendant is inadmissible; but

---

"Q. Please explain to the ladies and the gentlemen of the jury how you were brought to Margarita García Garay's house by defendants Amalia Ortiz Fuentes and Rosa Lydia Ortiz, and for what purpose.

"A. So that she could receive the money belonging to the child I was going to have.

"Q. To whom was the money to be paid?

"A. To Amalia's son.

"Q. What did they want you to do?

"A. To have a miscarriage.

"Q. What else, if anything, did Rosa Lydia Ortiz say to you?

"A. She told me that she had submitted to an abortion and that nothing happened to her; that nothing would happen to me.

"Q. Who said that to you?

"A. Rosa Lydia Ortiz, the second one seated over there.

"Q. Tell me, Berzaida, who did Rosa Lydia Ortiz tell you had performed the two abortions upon her person?

"A. Margarita García Garay.

"Q. "Defense: We object, Your Honor; we move to strike out the question and the answer; we are not trying any case of hers . . .

"The Court: Very well, but it is part of this transaction, to see how they induced her, if they did induce her. Overruled.

"Defense: Exception, Your Honor.

"The Court: The prosecuting attorney may proceed.

"Prosecuting attorney:

"Q. Who did Rosa Lydia Ortiz tell you had performed the two abortions on her?

"A. Margarita García Garay.

"Q. What did Amalia Ortiz Fuentes, the other defendant, tell you, if she did tell you anything?

"A. She advised me to have an abortion performed; that it was nothing.

"Q. Did you go to the house of the other defendant, Margarita García Garay?

"A. Yes, sir, they took me there."

[2] Her testimony in this respect was as follows:

"Q. When you were in that room, were you alone or with someone else?

"A. With someone else.

that, by way of exception, evidence of other offenses is admissible when the former offense is a material fact to establish the commission of the crime charged, or when it is a part of the *res gestæ*, or when the evidence is presented to show motive, intent, premeditation, malice, or a common plan, or when both offenses form part of the same transaction. *People v. Juarbe*, 43 P.R.R. 428; *People v. Pérez*, 47 P.R.R. 724; *People v. Rodríguez*, 66 P.R.R. 302; *People v. Román*, 70 P.R.R. 48; *People v. Archeval*, 74 P.R.R. 478.

There is no substantial conflict in the judicial authorities or any discrepancy in the views among text writers as to the fact that the evidence of other similar offenses commit-

"Q. With whom?

"A. With another young girl who was there next to me.

"Q. Did you see what she was going to that other girl?

"Defense: We object, Your Honor.

"Don't answer.

" . . . . . . . .

"The Court: The court, in view of what is said in Wharton on *Criminal Evidence*, Vol. 1, p. 199, admits the evidence.

"Defense: We take exception, with all due respect, Your Honor.

"Prosecuting Attorney:

"Q. Did you see what they were doing to that other woman who was next to you?

"Defense: Your Honor, we object to the whole examination and take exception.

"The Court: Proceed.

"Q. Answer my question.

"A. The other girl was in the same condition; she was performing an abortion on her.

"Q. Who was taking care of her?

"A. Margarita García Garay.

"Q. Were you watching what Margarita García Garay was doing to that other girl who was next to you?

"A. Yes, the same thing she did to me.

. . . . . . . .

"Q. Did she scream the same way you did?

"A. She moaned.

"Q. Was Margarita present when she was moaning?

"A. Yes, sir.

"Q. And what did she say?

"A. That she felt something inside. That was after the abortion.

"Q. What did Margarita say to her?

"A. To sit on a chamber pot so that if anything remained inside she could expel it, and she spent the whole night like that."

ted by the defendant is material in establishing the criminal intent in abortion prosecutions and, hence, admissible. Though this is the general rule, the authorities are at variance as to its application. The rule announced in one line of cases is that, where the element of *intent* is a necessary ingredient of the crime charged, and the state is bound to prove it, evidence of the performance of abortions or attempted abortions is admissible as being relevant to the question in issue (criminal intent) as part of the state's principal case. *State* v. *Sturchio*, 130 N.J.L. 259, 32 A. 2d 577; *Clark* v. *People*, 224 Ill. 554, 79 N.E. 941; *Commonwealth* v. *Blair*, 126 Mass. 40; *State* v. *Fay*, 21 A. 2d 607; *People* v. *Hobbs*, 130 N.E. 779; *State* v. *Rowley* (Iowa), 195 N. W. 881; *Max* v. *People* (Colo.), 240 Pac. 697; *Hightower* v. *State* (Arizona), 158 P. 2d 156; *State* v. *McCurtain* (Utah), 172 Pac. 481; *State* v. *Newell* (Minn.), 159 N. W. 829; *State* v. *Brown* (Del.), 85 Atl. 795; *State* v. *Doty* (Minn.), 208 N. W. 760; *State* v. *Steadman* (S.C.), 59 S.E. 2d 168; *People* v. *Richardson*, 120 Pac. 20; *Wilson* v. *State* (Md.), 26 A. 2d 770; *State* v. *Durkee* (R. I.), 26 A. 2d 604; *Smith* v. *State* (Okl.), 175 P. 2d 348. See, also, 2 Wigmore *on Evidence* 270, 3d ed., § 359; 1 C.J.S., 336, *"Abortion"*, § 28; 1 Am. Jur. 148, *"Abortion"*, § 42.

On the other hand, it has been held that evidence of this class is relevant and material only where the defendant testifies or in anyway admits the facts but denies any criminal intent, alleging some other excuse or justification for his act. *People* v. *Darby*, 148 P. 2d 28; *State* v. *Cragun* (Utah), 38 P. 2d 1071; *People* v. *Seaman* (Mich.), 65 N.W. 203; *People* v. *Hickoks* (Cal.), 204 Pac. 555; *Clark* v. *Commonwealth* (Ky.), 63 S.W. 740; *State* v. *Choate* (N.C.), 46 S.E. 2d 476; *Schneider* v. *People*, 199 P. 2d 873; *State* v. *Gillis*, 59 P. 2d 679; *People* v. *Lonsdale*, 81 N.W. 277; *People* v. *Spier*, 105 N.Y.S. 741; *State* v. *Wilson*, 233 Pac. 259; *Gray* v. *State*, 178 S.W. 337.

 Appellant was charged with a violation of Act No. 136 of May 14, 1937. That Act provides:

"Section 1.—It is hereby prohibited, except in the case of a therapeutic prescription by a physician duly authorized to practice medicine in Puerto Rico, for the purpose of preserving health or life, to prescribe, advise, or induce abortion, or to practice abortion on a pregnant woman.

"Section 2.—Every person who, in violation of the provisions of Section 1 of this Act, may furnish, supply, prescribe, or administer to a pregnant woman, by oral, rectal, or vaginal injections, any drug, substance, or medicinal, therapeutic, or opotheretic agent, or who uses any surgical instrument or mechanical agent with the intention or purpose of causing abortion, or practicing an abortion, shall be guilty of a felony . . ."

It is conceded by the parties that criminal intent, under this statute, is a necessary ingredient of the crime charged to appellant. She alleges, however, that the evidence of other abortions admitted by the lower court does not come within any of the exceptions to the general rule prohibiting the admission of such evidence. Under the rule first mentioned, evidence of other similar offenses committed by a person charged with a violation of Act No. 136 would be relevant and material in establishing the criminal intent in the offense charged, provided, however, that between the other offenses and the offense charged in the information there is a reasonable connection as to the time and place of commission. Notwithstanding this, the testimony of the aggrieved party, Berzaida Torres Reyes, to the effect that Rosa Lydia had told her that Margarita García Garay had performed two abortions upon her, would be inadmissible for the reasons which follow. The testimony contains no reference to the date or dates on which appellant performed the abortions on Rosa Lydia Ortiz. These dates could be so remote that the abortions might shed no light on the question of criminal intent involved in the offense for which appellant is on trial. Moreover, the testimony does not contain suffi-

cient elements to prove, not even prima facie, the commission by appellant of other similar offenses. By § 1 of Act No. 136 it is prohibited, except in the case of a therapeutic prescription by a physician duly authorized to practice medicine in Puerto Rico, for the purpose of preserving health or life, to prescribe, advise, or induce abortion, or to practice abortion on a pregnant woman. Therefore, evidence of two previous abortions performed by the defendant does not establish, without more, the commission of other offenses. This is so because, for an abortion to be criminal under this Act, it is necessary that it be performed under the circumstances prohibited by the statute. Since the People failed to prove that appellant had previously performed two criminal abortions on Rosa Lydia Ortiz, the aggrieved party's testimony on those two abortions did not prove or aid in proving criminal intent in the offense charged. The same rule under discussion implies that similar independent offenses must be established by competent evidence before they can be admitted as proof of the criminal intent in the offense for which the defendant is on trial. *People* v. *Molineux*, 61 N.E. 286; *State* v. *Howard*, 183 Atl. 497; *Wrather* v. *State*, 169 S.W. 2d 854; *State* v. *Porter*, 294 N.W. 898; *Weiss* v. *United States*, 122 F. 2d 675; *People* v. *Gordon*, 71 Cal. App. 2d 606, 163 P. 2d 110; *State* v. *Smith*, 194 Pac. 867; 2 Wigmore *on Evidence* 196 (3rd ed.), § 302.

Still, the admission of such evidence was not error in this case. That evidence was clearly admissible against codefendant Rosa Lydia Ortiz. She was charged in the information with prescribing, advising, and inducing Berzaida Torres Reyes to submit to an abortion. Therefore, the statements made by this codefendant to the aggrieved party for the purpose of inducing her to submit to an abortion are relevant to the offense charged and, consequently, admissible in evidence against her. Under the circumstances, it was incumbent upon appellant to request the trial judge to give an instruction to the jury to disregard that evidence

against her. In the absence of such a request, the failure to give such an instruction is not error. *Alexander* v. *United States*, 95 F. 2d 873; *Silkworth* v. *United States*, 10 F. 2d 711; *Wilkes* v. *United States*, 80 F. 2d 285; *Troutman* v. *United States*, 100 F. 2d 628; *Reavis* v. *United States*, 106 F. 2d 982; *Moore* v. *State*, 165 So. 596, 27 Ala. App. 43; *People* v. *Simeone*, 161 P. 2d 369, 26 Cal. 2d 795; *People* v. *James*, 105 P. 2d 947, 40 Cal. App. 2d 740; *Dauer* v. *United States*, 189 F. 2d 343.

██ The California decisions generally are to the effect that where the accused does not request the court to give a proposed instruction, he is not in a position to complain against the omission of such instruction. *People* v. *Coronado*, 135 P. 2d 647; *People* v. *Warren*, 104 P. 2d 1024; *People* v. *Heddens*, 55 P. 2d 230; *People* v. *Bill*, 35 P. 2d 645; *People* v. *King*, 223 Pac. 1001; *People* v. *Martin*, 185 Pac. 1003; *People* v. *Scofield*, 265 Pac. 914.

██ The evidence of the abortion performed by appellant on another young girl, in the same room and at the same time as the abortion on the aggrieved party, Berzaida Torres Reyes, was admissible for other reasons. That evidence was part of the *res gestæ* and, therefore, admissible as an exception to the general rule prohibiting the admission of evidence of other offenses. *People* v. *Archeval, supra; Housman* v. *State*, 230 S.W. 2d 541.

██ In the second and last assignment appellant charges that the trial court "erred in failing to instruct the jury to exercise care in weighing the testimony of the aggrieved party, who, though not technically an accomplice, still was one in a moral sense."

The error was not committed. A woman submitting to an abortion operation is not, as a matter of law, an accomplice. *People* v. *Stone*, 202 P. 2d 333; *People* v. *Clapp*, 151 P. 2d 237; *People* v. *Alvarez*, 166 P. 2d 896; *People* v. *Young*, 75 N.E. 2d 349; *Cahill* v. *State*, 178 P. 2d 657; *Com.* v. *Sierakouski*, 35 A. 2d 790; *State* v. *Montifoire*, 116

Atl. 77. The fact that she submitted voluntarily to the operation does not alter the rule. *People* v. *Roades*, 209 P. 2d 33; *People* v. *Miner*, 214 P. 2d 557. But even in those cases in which a witness is an accomplice, such an instruction, though proper, is unnecessary. *Pine* v. *United States*, 135 F. 2d 353, *cert. den.* 320 U.S. 740; *People* v. *Nathanson*, 59 N.E. 2d 677; *Commonwealth* v. *Romito*, 70 A. 2d 444; *State* v. *Simpson*, 236 P. 2d 1077. This being so, appellant cannot complain that the instruction was not given to the jury, and much less if she failed to request the court to do so.

The judgment appealed from will be affirmed.